## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF OCEANA

JULIE SCHULZ HALBOWER, as Trustee of
THE HALBOWER LEGACY TRUST,

        Plaintiff,

    v.

HISCOX SYNDICATES 33 LLOYDS OF
LONDON.,

        Defendant.

Case No.: 22-15435-CB

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C § 1446(d), Defendant, Hiscox Syndicates 33 of Lloyds of London ("Hiscox"), hereby gives notice that, on October 14, 2022, a Notice of Removal of this action was filed in the United States District Court for the Western District of Michigan.  A true and correct copy of the Notice of Removal is attached as Exhibit A.  Section 1446(d) requires that the removing defendant "promptly" file the notice of the removal with the state court, "which . . . shall proceed no further unless and until the case is remanded."

Dated: October 17, 2022

        Respectfully submitted,

        By: _____
        Clinton E. Cameron (P45567)
        CLYDE & CO US LLP
        55 West Monroe Street, Suite 3000
        Chicago, Illinois 60603-5757
        T: (312) 635-7000
        F: (312) 635-6950
        clinton.cameron@clydeco.us

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 17, 2022, a copy of the foregoing was deposited in the United States Mail, first-class postage prepaid, to:

Jeffrey G. Muth
Neil J. Marchand
Amanda L. Rauh-Bieri
45 Ottawa Avenue, S.W. Suite 1100
Grand Rapids, MI 49501-0306
616-831-1700

Clinton E. Cameron (P45567)

# EXHIBIT A

## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JULIE SCHULZ HALBOWER, as Trustee of
THE HALBOWER LEGACY TRUST,

        Plaintiff,

    v.

HISCOX SYNDICATE 33 OF LLOYD'S OF
LONDON,

        Defendant.

Civil Action No: 22-cv-964

### DEFENDANT'S NOTICE OF REMOVAL

Defendant, HISCOX SYNDICATE 33 OF LLOYD'S OF LONDON ("Hiscox" or "Defendant"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, respectfully files this Notice of Removal of this action from the 51st Circuit Court for the County of Oceana, Michigan, to the United States District Court for the Western District of Michigan, Southern Division.  For the reasons set forth below, removal is proper based on 28 U.S.C. §§ 1332(a)(2), 1441, and 1446.

### INTRODUCTION

1.      On August 17, 2022, Plaintiff JULIE SCHULZ HALBOWER, as Trustee of THE HALBOWER LEGACY TRUST ("Halbower" or "Plaintiff") filed a Complaint in the Circuit Court of Oceana County, Michigan styled *JULIE SCHULZ HALBOWER, as Trustee of THE HALBOWER LEGACY TRUST v. HISCOX SYNDICATE 33 OF LLOYD'S OF LONDON,* Case No. 22-0435-CB (the "Complaint") in the 51st Circuit Court of the State of Michigan.

2.      Hiscox was served with a copy of Plaintiff's Complaint on September 15, 2022.  A copy of Plaintiff's Summons and Complaint and Proof of Service are attached hereto as Exhibit A.

3.      Plaintiff's Complaint is the only pleading, process, or order that has been served on Defendant in this action to date.

4.      Plaintiff alleges that Hiscox sold to Halbower a Fine Art Insurance Policy bearing Policy No. B1161HIS21K22X3019 (the "Policy") with a limit of liability of up to $100 million. *See* Exhibit A, Plaintiff's Complaint, ¶ 2.

5.      Plaintiff's Complaint includes two separate counts which are based on different or alternative causes of action: Breach of Contract Against Hiscox (Count I) and Declaratory Judgment Against Hiscox (Count II).  Exhibit A, Plaintiff's Complaint, Count I-II.

## <u>JURISDICTION</u>

6.      This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), and is one which may be removed to this Court pursuant to 28 U.S.C. § 1441. It is a civil action between the plaintiff, a citizen of the State of New Hampshire, and the defendant, a citizen of the United Kingdom, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, because the combined damages sought by Plaintiff regarding the underlying action exceed this sum.

7.      A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other paper from which it may be ascertained that the case is removable. 28 U.S.C. § 1446(b).  Hiscox was served with Plaintiff's Complaint on September 15, 2022, therefore this Notice of Removal, filed on October 14, 2022, is timely. *See* Exhibit A.

8.      Venue is proper in this district under 28 U.S.C. § 1441(a) since the removed action was pending in Oceana County, Michigan, which is within the Southern Division of the United States District Court for the Western District of Michigan.

**Amount in Controversy**

9.      Plaintiff seeks insurance benefits exceeding $20 million allegedly due to Plaintiff under an insurance policy, with limits of $93,561,915, together with Plaintiff's attorneys' fees and costs. *See* Exhibit A, Plaintiff's Complaint, ¶ 35. Accordingly, this action seeks damages in excess of the $75,000.00 jurisdictional minimum as a legal certainty.

**Diversity of Parties**

10.     Complete diversity of citizenship exists between Plaintiff and Defendant.

11.     Plaintiff alleges that the trustee of the Halbower Legacy Trust, Julie Halbower, is a citizen of the State of New Hampshire. *Id.*, ¶ 9.  Accordingly, Plaintiff is a citizen of New Hampshire for the purposes of the grant of jurisdiction to this Court under 28 U.S.C. § 1332.

12.     It is well-established by controlling Sixth Circuit precedent that, where a defendant is a syndicate within the Lloyd's of London market of insurance companies, the "real party to the controversy test" applies with regard to determining the defendant's citizenship for purposes of diversity.  Diversity of citizenship is, in turn, measured in connection with the citizenship of the plaintiff and the citizenship of the syndicate's *managing agent* – not the individual members of each syndicate. *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 42–44 (6th Cir. 1994). Here, Hiscox Syndicates Limited ("HSL") is the managing agent of the only syndicate on the Policy.  *See* Exhibit A, Plaintiff's Complaint, ¶ 10. Therefore, HSL is the "real party to the controversy," and only HSL's citizenship is relevant to determining whether diversity of citizenship is present under 28 U.S.C.§ 1332.

13.     HSL is a limited company created under the law of England and Wales.  English limited companies are treated in the same manner as are corporations created under the laws of the various States of the United States for the purposes of diversity of citizenship. *See Brink's Co. v.*

3

*Chubb European Group Ltd.*, Civil Action No. 3:20-cv-520–HEH, 2020 WL 6829870, at *5 n.1 (E.D. Va. Nov. 20, 2020) (collecting cases).  HSL has its principal place of business in London. The Complaint alleges that Hiscox is organized and exists under the laws of England with its principal place of business in London, England.  *Id.* ¶ 10.

      14.     Accordingly, because HSL – the defendant that is the real party in interest for the citizenship analysis under controlling Sixth Circuit precedent – is a citizen of a foreign state (the United Kingdom) – and the plaintiff is a citizen of the State of New Hampshire, there is diversity jurisdiction present under 28 U.S.C.§ 1332(a)(2).

### 28 U.S.C. § 1446 REQUIREMENTS

      15.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders that have been filed in the action pending in the Oceana County Court Case No. 22-0435-CB are attached as Exhibit A.

      16.     Written notice of the filing of the Notice of Removal shall be served upon Plaintiff as required under 28 U.S.C § 1446(d). After the filing of the Notice of Removal, Defendant shall promptly transmit a copy of the Notice of Removal to the Clerk of the Oceana County Circuit Court as required by 28 U.S.C § 1446(d).

WHEREFORE, Defendant Hiscox respectfully requests that the above-described cause of action pending in the Circuit Court of Oceana County, Michigan, be removed therefrom to the United States District Court for the Western District of Michigan, Southern Division and that this cause proceeds in this Court as an action properly removed thereto.

Dated:  October 14, 2022                    Respectfully submitted,

By: /s/Clinton E. Cameron
Clinton E. Cameron (P45567)
CLYDE & CO US LLP
55 West Monroe, Suite 3000
Chicago, IL 60603
Telephone: (312) 635-7000
Facsimile: (312) 635-6950
E-Mail: clinton.cameron@clydeco.us
*Attorneys for Hiscox Syndicate 33 of Lloyd's of London*

Case 1:22-cv-00964   ECF No. 1-1, PageID.6   Filed 10/14/22   Page 1 of 41



## Case Details

EXHIBIT A

Additional Resources ▾

**Case ID**
2022-0000015435-CB

**Court Location**
51st Circuit Court - Oceana - Hart

**Case Entitlement**
SCHULZ V HISCOX SYND 33 OF LL

**Judge of Record**
SNIEGOWSKI,SUSAN KASLEY,

**Date Filed**
08/17/2022

**Case Status**
OPEN

**Closed Date**
01/01/0001

**Balance**

### Parties (2)

**Party Name**
THE HALBOWER LEGACY TRUST,,

**Party Type/Number**
PLAINTIFF - 1

**Attorney Name**
NEIL JOSEPH MARCHAND

**Alternate Name(s)**
TRS JULIE SCHULTZ HALBOWER

**Answer Date**

**Service Date**

**Disposition**

**Disposition Date**

**Party Name**
HISCOX SYND 33 OF LLOYDS OF LONDON

**Party Type/Number**
DEFENDANT - 1

**Attorney Name**

**Alternate Name(s)**

**Answer Date**

**Service Date**
09/15/2022

**Disposition**

**Disposition Date**

#### Party Action(s)

| Category | Action | Action Date | Action Due Date |
|---|---|---|---|
| RETURN OF SERVICE | RETURN OF SERVICE | 09/15/2022 | 01/01/0001 |

### Bonds (0)

### Hearings (0)

### Financial Orders (0)

### Events (3)

| Date | Description | Comment | Party/Count | Amount | Receipt No./Date/Judge | Clerk |
|---|---|---|---|---|---|---|
| 09/15/2022 | RETURN OF SERVICE | PERSONAL SERVICE - AFFIDAVIT OF SERVICE | D1 | | | KM |
| | | Hearing Officer - SNIEGOWSKI,SUSAN KASLEY, | | | | |
| 08/17/2022 | SUMMONS AND | | P1 | | | KM |

1/2

| Date | Description | Comment | Party/Count | Amount | Receipt No./Date/Judge | Clerk |
|------|-------------|---------|-------------|--------|------------------------|-------|
| | COMPLAINT | Hearing Officer - SNIEGOWSKI,SUSAN KASLEY, | | | | |
| | JURY DEMAND FILED | | P1 | | | KM |
| | | Hearing Officer - SNIEGOWSKI,SUSAN KASLEY, | | | | |

 Wolters Kluwer

## PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Thu, Sep 15, 2022
**Server Name:**                             Joseph Gill

| Entity Served | LLOYD'S AMERICA, INC. |
|---|---|
| Case Number | 2215435CB |
| Jurisdiction | NY |

| Inserts | | |
|---|---|---|
| | | |



Approved, SCAO

| | Original - Court | 2nd copy - Plaintiff |
| | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | CASE NO. |
| 51st | JUDICIAL DISTRICT | SUMMONS |
| | JUDICIAL CIRCUIT | 22-__5435__-CB |
| | COUNTY PROBATE | |

**Court address**
100 S. State Street, Suite M-10, Hart, MI 49420

**Court telephone no.**
(231) 873-3977

**Plaintiff's name(s), address(es), and telephone no(s).**
JULIE SCHULZ HALBOWER, as Trustee of THE HALBOWER LEGACY TRUST

v

**Defendant's name(s), address(es), and telephone no(s).**
HISCOX SYNDICATE 33 OF LLOYD'S OF LONDON
c/o Lloyd's America, Inc.
Attn: Legal Department
280 Park Avenue
East Tower, 25th Floor
New York, NY 10017

**Plaintiff's attorney, bar no., address, and telephone no.**
Jeffrey G. Muth (P65041)
Neil J. Marchand (P73118)
Amanda L. Rauh-Bieri (P83615)
Miller Johnson
45 Ottawa Avenue SW, Suite 1100, P.O. Box 306
Grand Rapids, MI 49506          (616) 831-1700

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.      **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date * | Court clerk |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)  **SUMMONS**                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| **PROOF OF SERVICE** | Case No. | **SUMMONS** |
|---|---|---|
| | | 22-____-CB |

TO PROCESS SERVER:  You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons.  You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE**    OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104(A)(2)), and that:    (notarization not required) | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103(A)), that:    (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint.

together with _____

List of documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
|---|---|---|---|---|
| $ | | $ | | |
| Incorrect address fee | Miles traveled | Fee | **TOTAL FEE** | Name (type or print) |
| $ | | $ | $ | |
| | | | | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                                                Date

My commission expires: _____   Signature: _____
                                    Date                              Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                            Attachments

_____ on _____
                                      Day, date, time

                                      on behalf of _____

_____
Signature

### STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE COUNTY OF OCEANA

JULIE SCHULZ HALBOWER, as Trustee of
THE HALBOWER LEGACY TRUST,

Plaintiff,                          Case No. 22-_15435_ -CB

v.                                  HON.

HISCOX SYNDICATE 33 OF LLOYD'S OF
LONDON,

Defendant.

---

Jeffrey G. Muth (P65041)
Neil J. Marchand (P73118)
Amanda L. Rauh-Bieri (P83615)
MILLER JOHNSON
Attorneys for Plaintiff
45 Ottawa Ave S.W., Suite 1100
PO Box 306
Grand Rapids, MI 49506
(616) 831-1700
muthjg@millerjohnson.com
marchandn@millerjohnson.com
rauhbieria@millerjohnson.com

---

### JURY DEMAND

Plaintiff, Julie Schulz Halbower, as Trustee of the Halbower Legacy Trust, through

its attorneys, Miller Johnson, demands trial by jury as to all issues so triable.


                                    MILLER JOHNSON
                                    Attorneys for Plaintiff

Dated: August 17, 2022             By _____Neil J. Marchand_____
                                       Jeffrey G. Muth (P65041)
                                       Neil J. Marchand (P73118)
                                       Amanda L. Rauh-Bieri (P83615)
                                    Business Address:
                                       45 Ottawa Avenue, S.W., Suite 1100
                                       Grand Rapids, MI 49501-0306
                                    Telephone: (616) 831-1700


MJ_DMS 35119081v1

### STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE COUNTY OF OCEANA

JULIE SCHULZ HALBOWER, as Trustee of
THE HALBOWER LEGACY TRUST,

      Plaintiff,

v.

HISCOX SYNDICATE 33 OF LLOYD'S OF
LONDON,

      Defendant.

Case No. 22-15435-CB

HON.    **ASSIGNED TO JUDGE
SUSAN K. SNIEGOWSKI**

---

Jeffery G. Muth (P65041)
Neil J. Marchand (P73118)
Amanda L. Rauh-Bieri (P83615)
MILLER JOHNSON
Attorneys for Plaintiff
45 Ottawa Ave S.W., Suite 1100
PO Box 306
Grand Rapids, MI 49506
(616) 831-1700
muthjg@millerjohnson.com
marchandn@millerjohnson.com
rauhbieria@millerjohnson.com

---

This is a business case in which all or part of the action includes a
business or commercial dispute under MCL 600.8035. Plaintiff is not
aware of any other pending or resolved civil action arising out of the same
transaction or occurrence as alleged in this complaint.

### COMPLAINT

Julie Schulz Halbower, as Trustee of the Halbower Legacy Trust ("Plaintiff"), for

Plaintiff's Complaint against Hiscox Syndicate 33 of Lloyd's of London ("Hiscox") states:

### INTRODUCTION

1.    Tragically, beginning on June 2, 2022 and continuing through June 3, 2022,

a fire ("June Fire") destroyed a home in Oceana County, Michigan ("Oceana County Home")

which included fine art owned by Plaintiff.

2.      The June Fire resulted in a total loss of the Oceana County Home and its contents, including five works of fine art insured under a Fine Art Policy issued by Howden Insurance Brokers Limited ("Howden") and Hiscox and underwritten by Hiscox, Policy No. B1161HIS21K22X3019 ("Fine Art Policy" attached at **Exhibit A**).

3.      The Oceana County Home is identified in the Fine Art Policy as one of the locations where the insured fine art was situated.

4.      Howden is the broker and agent of Hiscox.

5.      The Trust is an insured under the Fine Art Policy.

6.      To date, Hiscox and Howden have acknowledged coverage, with Hiscox partially reimbursing Plaintiff for three of the five works (hereafter referred to as the *Cliff*, the *Path* and the *Castle*) of art lost in the June Fire.

7.      However, Hiscox has refused to pay the full insured value of the *Cliff*, the *Path*, and the *Castle* and has also failed to pay for two other artworks (the *Prairie* and the *River*) destroyed in the June Fire.

8.      Hiscox has therefore breached the Fine Art Policy by refusing to pay the full insured value of all five works of art destroyed in the June Fire.

**THE PARTIES & JURISDICTION**

9.      The Halbower Legacy Trust is a trust currently organized under the state of Florida and its trustee, Julie Schulz Halbower, is a citizen of New Hampshire.

10.      Hiscox, on information and belief, is a business entity organized and existing under the laws of England with their principal place of business in London, England. Hiscox is a 100% subscriber to Policy No. B1161HIS21K22X3019.  In the Fine Art Policy,

2

Defendant Hiscox consented to the jurisdiction of a court of competent jurisdiction within the United States.

11.    This Court has jurisdiction over the subject matter of this action pursuant to MCL 600.605 and MCR 2.605(A).

12.    Venue is proper in this Court under MCL 600.1621 because Defendant Hiscox has done business, and continues to do business, in Oceana County, Michigan.

## GENERAL ALLEGATIONS

### Plaintiff's Collection is Insured Under the Fine Art Policy

13.    Plaintiff owns a collection of fine art. Some of Plaintiff's collection hung in the Oceana County Home.

14.    In November 2021, Plaintiff sought to obtain a fine art insurance policy that would cover its fine art collection, including the artwork located in the Oceana County Home.

15.    On behalf of Plaintiff, Matthew Halbower ("Mr. Halbower") worked with Tonja VanRoy at Pegasus Insurance Services LLC ("Pegasus") to obtain insurance proposals for Plaintiff's fine art collection.

16.    Pegasus is identified as the Insurance Agent in the Fine Art Policy.

17.    On November 17, 2021, Mr. Halbower emailed Ms. VanRoy a copy of a June 8, 2021 fine art appraisal ("the June 2021 Appraisal") for some of the artwork in Plaintiff's collection. As Mr. Halbower explained in the email communication to Ms. VanRoy, "[h]ere is a start"—meaning that it was the start of the list of artworks in Plaintiff's collection.

18.    The June 2021 Appraisal includes the *Cliff*, the *Path* and the *Castle*.

19.    Later that same day, Mr. Halbower sent Pegasus another email that included a list of more artwork in Plaintiff's collection. The list included, among other artwork, the *Cliff*,

the *Path* and the *Castle*, along with a fourth painting, the *Prairie*, that also later hung in the Oceana County Home ("November 2021 Inventory").

20.    On November 18, 2021, Ms. VanRoy at Pegasus forwarded the November 2021 Inventory to Harriet Horton at Howden—Hiscox's broker.

21.    Ms. Van Roy explained in her email to Howden that the November 2021 Inventory—which included the *Cliff*, the *Path*, the *Castle* and the *Prairie*—was "a follow up to [her] earlier submission, yesterday" for Plaintiff's collection. Ms. VanRoy informed Howden that she "wanted to pass [Mr. Halbower's email and the inventory] on as well as part of the submission[.]"

22.    On November 24, 2021, Pegasus provided the insurance proposal from Hiscox for Plaintiff's fine art collection. The proposal included a $100 million policy limit.

23.    On January 30, 2022, Mr. Halbower emailed Pegasus: "I would like to go with Lloyd's [Hiscox] for the artwork. I want to make sure that you have an inventory of the higher price paintings." Mr. Halbower included in his January 30, 2022 email a list of the "higher price paintings" in the Halbower collection, which again included the *Cliff*, the *Path*, the *Castle* and the *Prairie,* which were all previously identified in the November 2021 Inventory. Mr. Halbower's email stated, "I am happy with the $100,000 million [sic] coverage. I don't need to modify as the art is spread out in different homes."

24.    On February 10, 2022, Pegasus confirmed that the fine art coverage brokered by Howden and underwritten by Hiscox was bound effective February 9, 2022. Pegasus then emailed Mr. Halbower a copy of the Fine Art Policy which is attached at **Exhibit A.**

25.     On April 5, 2022, Plaintiff received an updated appraisal ("the April 2022 Appraisal") that included the three works previously appraised in the June 18, 2021 appraisal— the *Cliff*, the *Path*, and the *Castle*. All three artworks had appreciated in value.

26.     The April 2022 Appraisal also included an appraisal of the *Prairie*. The *Prairie* had been acquired in September of 2021, several months after the June 2021 Appraisal, but was listed on the November 2021 Inventory sent by Pegasus to Hiscox's broker, Howden and was also listed in the January 30, 2022 email sent by Mr. Halbower to Pegasus.

27.     After receiving the April 2022 Appraisal, Mr. Halbower emailed Pegasus and stated that some of the artwork in Plaintiff's collection had been appraised at a higher value. Mr. Halbower wrote: "Just confirming that the [Fine Art Policy] is written so I can get fair market value if any 1 piece is stolen or damaged? I think I am comfortable with $100 million of coverage even though [the appraisers] think that the collection is worth more than that."

28.     Pegasus responded: "Yes – it will be FMV at time of loss." FMV is Fair Market Value.

29.     Mr. Halbower forwarded a copy of the April 2022 Appraisal to Pegasus on June 3, 2022.

### The Fine Art Policy

30.     Plaintiff's Fine Art Policy states: "**We will insure your collection** anywhere in the world, unless otherwise stated in the **risk details**, against physical loss or physical damage which happens during the **period of insurance**, subject to the exclusions, terms, and conditions shown below." **Ex. A: The Fine Art Policy.**

31.     The Fine Art Policy defines "collection" as "the property shown in the risk details."

32.    There is no document or part of the policy labeled "risk details" within the Fine Art Policy.

33.    The Fine Art Policy does contain a document titled "The Schedule."

34.    However, "The Schedule" does not use the word "property" or define the word "property".

35.    "The Schedule" does contain the following language:

> **Interest:** Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker

36.    The Policy does not include an "attached schedule."

37.    Hiscox has acknowledged that the Policy does not include an "attached schedule" and has never included an "attached schedule"

38.    No "attached schedule" was ever communicated to Plaintiff or Mr. Halbower and no list of what "may be" held on file by the Lloyd's Broker was ever communicated to Plaintiff or Mr. Halbower.

39.    As for coverage, the Fine Art Policy states: "If an item is lost or destroyed we will pay the amount insured of that item as shown in the basis of the valuation above."

40.    The "[b]asis of valuation," in turn, is divided into two categories—"Listed items" and "Unlisted items."

41.    The Fine Art Policy states that the Basis of Valuation for Listed Items is: "**Listed items** – For items which are listed individually in the specification held by **us** or **your** insurance agent, the value is the amount insured shown for each item."

42.    There is no definition of "specification" contained in the Fine Art Policy.

43.    However, both Howden and Pegasus were in possession of the November 2021 Inventory prior to Hiscox binding coverage.

6

44.    The Fine Art Policy does not provide an "amount insured" for any of the "listed items" in the "collections." Instead, the Fine Art Policy simply provides a total sum insured.

45.    The Fine Art Policy states that the Basis of Valuation for Unlisted Items is: **"Unlisted items** - For items which are not individually listed in the specification held by **us** or **your** insurance agent, the value is the market value of the items on the date of loss."

46.    Accordingly, the Fine Art Policy covers both listed and unlisted Fine Arts of whatsoever nature.

47.    The "[t]otal amount payable" under the Fine Art Policy is "[t]he most **we** will pay in total for each incident of loss is the **total amount insured** plus any additional expenses as described above." The "total amount insured" is defined as "[t]he most **we** will pay for each incident of loss as shown in the **risk details**."

48.    The Schedule provides that the "Sum Insured" is "USD  93,561,915 increasing up to USD 115,000,000 as per the New Possession clause detailed in the policy wording."

49.    The loss incurred as a result of the June Fire is less than the Sum Insured under the Fine Art Policy.

### A Fire at the Oceana County Home Destroys Four Works of Art
### Insured Under the Fine Art Policy

50.    The June Fire destroyed the Oceana County Home and all of its contents.

51.    Five works of art insured under the Fine Art Policy were destroyed in the June Fire. Four of the five works of art – the *Cliff*, the *Path*, the *Castle* and the *Prairie* were listed in the November 2021 Inventory.

52.    On June 3, 2022, Mr. Halbower informed Pegasus of the loss as required under the Fine Art Policy.

7

53.     On June 3, 2022, Pegasus notified Howden of the loss and Hiscox has agreed that a claim for the *Cliff,* the *Path,* the *Castle,* and the *Prairie* was fully filed as of June 3, 2022.

54.     On June 4, 2022, Pegasus resent to Howden the November 2021 Inventory of Plaintiff's fine art—which listed the *Cliff,* the *Path,* the *Castle,* and the *Prairie* which were all destroyed in the June Fire.

55.     On the same day, Pegasus provided to Howden a list ("Pegasus List") containing the insured value of each item listed as established by the April 2022 Appraisal.

56.     The Pegasus List establishes the amount insured for the *Cliff,* the *Path,* the *Castle,* and the *Prairie.*

57.     Because Pegasus was Plaintiff's "insurance agent" and the Pegasus List contained the "value" of each item destroyed by the fire, it provides the "Basis of Valuation" for "Listed Items" as defined in the Fine Art Policy.

58.     Despite numerous communications from Pegasus and Mr. Halbower attempting to confirm coverage under the Fine Art Policy, neither Howden nor Hiscox responded for six weeks.

**Hiscox's July 18, 2022 Coverage Letter & Incomplete Coverage**

59.     On July 18, 2022, Hiscox sent a coverage letter to Plaintiff acknowledging coverage under the Fine Art Policy for three of the five works destroyed in the June Fire. Hiscox's letter, however, reserved its rights for covering the *Prairie,* pending its investigation.

60.     Hiscox stated that the *Cliff,* the *Path* and the *Castle* were covered under the Fine Art policy "at the values set forth in that [June 2021] appraisal."

8

61.     On or about August 4, 2022, Hiscox partially paid out the claim to Plaintiff in the amounts listed for the *Cliff*, the *Path* and the *Castle* on the June 2021 Appraisal.

62.     There is nothing contained in the Fine Art Policy that limits the valuation of Plaintiff's collection to the amounts shown on the June 2021 Appraisal.

63.     In fact, the only reference in the Fine Art Policy to the June 2021 Appraisal appears in the Schedule in reference to the total sum insured.

64.     Instead, the Fine Art Policy states that the Basis of Valuation for Listed Items is the "value" held by the "Insurance Agent" "for each item" which is the value contained on the Pegasus List which is supported by the April 2022 Appraisal.

65.     Additionally, Hiscox, refused to cover *Prairie*, which was contained in the November 2021 Inventory, on the basis that it was "not held on file" by Howden, despite the fact that Howden received the November 2021 Inventory from Pegasus on November 18, 2021.

66.     In its refusal to cover *Prairie*, Hiscox stated that it was "still investigating whether there is coverage," and therefore Hiscox "reserve[d] all rights with regards to coverage for that artwork."

67.     Hiscock has refused to pay the full value of the *Cliff*, the *Path* and the *Castle* established by the Pegasus List.

68.     Hiscock has refused to provide coverage for the *Prairie*, despite it being included in the November 2021 Inventory and its value established in the Pegasus List.

69.     Hiscock has also refused to cover the *River*, an unlisted item, destroyed in the June Fire.

70.     The River was valued in an August 2022 appraisal.

9

71.    Hiscock has breached its obligations under the Fine Art Policy by refusing to pay for the full insured value of the *Cliff*, the *Path*, and the *Castle* and by refusing to pay anything for the *Prairie* and the *River* destroyed in the June Fire.

## COUNT I: BREACH OF CONTRACT

72.    Plaintiff incorporates by reference the preceding paragraphs.

73.    Plaintiff is an insured under the Fine Art Policy. The Fine Art Policy covers a period of insurance from February 9, 2022 to February 9, 2023.

74.    Five works of art covered under the Fine Art Policy, four "listed items" and one "unlisted item," were destroyed in the June Fire, during the period of insurance.

75.    The Fine Art Policy covered all four listed artworks—the *Cliff*, the *Path*, the *Castle*, and the *Prairie*—at the values established for each in the Pegasus List (as supported by the April 2022 Appraisal) and provided to Howden and Hiscox.

76.    The Fine Art Policy further covers the *River*—an unlisted artwork—at its market value on June 2, 2022.

77.    Hiscox has breached the Fine Art Policy by refusing to provide coverage for the four listed items at the values set forth in the Pegasus List.

78.    Alternatively, to the extent any one of the listed items identified herein are determined to be unlisted items, Hiscox has breached the Fine Art Policy by refusing to provide coverage for any such unlisted item at its market value as of June 2, 2022.

79.    Hiscox has breached the Fine Art Policy by refusing to provide coverage for the unlisted item, the *River*, at its market value as of June 2, 2022.

80.    Plaintiff is entitled to damages as a result of Hiscox's breach of the Fine Art Policy.

81.    Pursuant to MCL 500.2006(4), Plaintiff is further entitled to simple interest at the rate of 12% per annum on the unpaid amount of Plaintiff's claim beginning August 3, 2022.

WHEREFORE, Plaintiff respectfully requests judgment in its favor on Plaintiff's breach of contract claim against Hiscox awarding Plaintiff:

a.   all compensatory damages sustained;

b.   any appropriate injunctive relief;

c.   their costs and attorneys' fees incurred;

d.   12% interest under M.C.L. § 500.2006(4); and

e.   all further relief that this Court deems just, equitable, or appropriate under the circumstances.

## COUNT II: DECLARATORY JUDGMENT

82.    Plaintiff incorporates by reference the preceding paragraphs.

83.    The facts and circumstances set forth above in this Complaint present an actual controversy regarding the rights and legal relations of the parties.

84.    The rights of the parties can only be determined by a declaratory judgment.

85.    The *Cliff*, the *Path*, the *Castle*, and the *Prairie*, which were destroyed in the June Fire, are "listed items" as part of Plaintiff's "collection anywhere in the world" and are insured under the Fine Art Policy.

86.    As "listed items," the basis of valuation for all four artworks is "the amount insured shown for each item."

87.    There is no "amount *insured* shown" for any of the four artworks in the Fine Art Policy.

88.    Accordingly, The Pegasus List, held by Pegasus as Plaintiff's insurance agent, establishes the values for each of the *Cliff*, the *Path*, the *Castle*, and the *Prairie*.

89.    The Pegasus List has been provided to Howden and Hiscox.

90.    Hiscox is required to provide coverage for the four listed items at the values established in the Pegasus List which incorporates the values shown in the April 2022 Appraisal.

91.    Alternatively, if any of the four listed items are deemed to be "unlisted items," they must be valued at their market value at the time of loss.

92.    The market value, as of June 2, 2022, for the four artworks contained in the November 2021 Inventory is properly determined by the April 2022 Appraisal.

93.    Either as "listed items" or as "unlisted items," the *Cliff*, the *Path*, the *Castle*, and the *Prairie*, all of which were included on the November 2021 Inventory and were destroyed in the June Fire, are covered under the Fine Art Policy.

94.    *The River*, which was also destroyed in the June Fire, is covered as an "unlisted item" under the Fine Art Policy and must be valued at its market value on the date of loss.

95.    The August 2022 Appraisal sets forth the market value for the *River* on the date of loss.

96.    In breach of the Fine Art Policy, Hiscox has only partially covered the loss of the *Cliff*, the *Path* and the *Castle*, in contradiction of the valuation provisions contained in the Fine Art Policy.

97.    In breach of the Fine Art Policy, Hiscox has refused to provide coverage for the *Prairie* and the *River*.

98.     Hiscox is obligated to cover the *Cliff*, the *Path*, the *Castle* and the *Prairie* at the values set forth in the Pegasus List and the unlisted item at the value established in the August 2022 Appraisal.

99.     Based on the foregoing, there is an actual controversy between the parties, and pursuant to MCR 2.605(A), this Court may declare the legal rights and obligations of the parties.

WHEREFORE, Plaintiff respectfully requests that this Court declare the rights of the parties as follows:

a.  The *Cliff*, the *Path*, the *Castle*, and *Prairie*, all of which were destroyed in the June Fire and included on the November 2021 Inventory sent by Pegasus to Howden, are "listed items" under the Fine Art Policy;

b.  As "listed items," the valuation under the Fine Art Policy for all four listed artworks destroyed in the June Fire is "the amount insured shown for each item";

c.  The Fine Art Policy does not show an amount insured for each item;

d.  The Pegasus List, which incorporates the values shown in April 2022 Appraisal establishes the amount insured for each listed item;

e.  The Pegasus List was provided to Howden and Hiscox;

f.  Alternatively, if any of the listed items are deemed "unlisted," their value is the market value of the items on the date of loss;

g.  The April 2022 Appraisal established the market value as of June 2, 2022 for those items;

13

h.    *The River*, an unlisted item, is covered under the Fine Art Policy and valued by its market value on the date of loss;

i.    The August 2022 Appraisal established the market value of the *River* on the date of loss;

j.    Hiscox is obligated under the Fine Art Policy to provide coverage for any listed item at its value established in the Pegasus List and for any unlisted item at its market value on the date of loss; and

k.    This Court shall award Plaintiff all other relief that this Court deems just, equitable, or appropriate under the circumstances.

MILLER JOHNSON
Attorneys for Plaintiff

Dated: August 17, 2022    By  _Neil J. Marchand_____
    Jeffery G. Muth (P65041)
    Neil J. Marchand (P73118)
    Amanda L. Rauh-Bieri (P83615)
Business Address:
    45 Ottawa Avenue, S.W., Suite 1100
    Grand Rapids, MI 49501-0306
Telephone: (616) 831-1700

14

# EXHIBIT A



**Attaching to and forming part of Certificate Number: <u>B1161/ HIS21 / K22X3019</u> under Delegated
Authority Number: B1161FA00522**

### The Schedule

| | |
|---|---|
| **Type:** | Private Fine Art Insurance |
| **Insurance Agent:** | Pegasus Insurance Services LLC<br>9360 W Flamingo Road, Suite 100 - #266<br>Las Vegas, NV 89147<br>United States of America |
| **Insured:** | Matthew and Julie Halbower **and/or** Halbower Legacy Trust |
| **Address:** | 40 Devonshire Lane, Kenilworth, IL 60043, United States of America |
| **Period:** | 9th February 2022 at Local Standard Time<br>to<br>9th February 2023 at Local Standard Time, both days inclusive |

Local Standard Time will be the time at which a loss occurs and within the "territorial scope" of this Insurance

| | |
|---|---|
| **Interest:** | Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker |
| **Sum Insured:** | USD 93,561,915 increasing up to USD 115,000,000 as per the New Possessions clause detailed within the policy wording |
| **Conditions:** | Hiscox PCA17 Wording |

**Endorsements**
LSW1001 Several Liability Notice
LMA5403 Marine Cyber Endorsement
NMA2920 Terrorism Exclusion Endorsement to apply at Commercial Premises only
JC2009/056 Termination of Transit Clause (Terrorism)
JC2010/014 Sanction Limitation and Exclusion Clause
NMA 464 War and Civil War Exclusion Clause
JS2020/011 Communicable Disease Clause
LMA5219 TRIA Terrorism Not Purchased Clause
Fraudulent Claims Clause
LMA9046 Illinois Surplus Lines Notice
LMA9124 Complaints Clause



**Subjectivities:** It is a condition of this policy that the following information/documentation is received by Underwriters on or before the deadline date(s) indicated below.  Where there is more than one deadline date, references in this subjectivity condition to "the deadline date" shall be to the deadline date corresponding to the information/document specified for production by that date.

Until the effective date on which the policy is cancelled or amended in accordance with this subjectivity condition, cover is provided by Underwriters hereon in accordance with the terms and conditions set out in this slip.

In the event that any part of this condition remains outstanding at the deadline date(s) or if the information/documentation provided is unsatisfactory to Insurers, Insurers reserve the right to cancel this policy or amend the terms and conditions, subject to giving to the Insured no less than:

a)        15 working days' written notice of cancellation, or
B)        5 working days' written notice of any amended terms and  conditions before they are due to take effect.

Insurers agree that all amendments must be reasonable, proportionate and materially relevant to the information / documentation to which this subjectivity condition refers.  If any such amended terms or conditions are unacceptable to the Insured, they may cancel the policy with immediate effect by giving written notice to the Insurer within 48 hours of receiving the amended terms and conditions.

In the event of cancellation, premium will be due to Underwriters on a pro-rata basis for the period that Underwriters were on risk but the full policy premium will be payable to Underwriters in the event of a notification prior to the date of cancellation which gives rise to a valid claim under this policy.

| SUBJECTIVITIES | DATE DUE: |
|---|---|
| Subject to split of locations | 8th March 2022 |

**Situation:**    40 Devonshire Lane, Kenilworth, IL 60043, United States of America
34 Pine Street, Exeter NH 03833, United States of America
635 N Ridge Road, Pentwater, MI 49449, United States of America

**Notification of
Claims to:**    Pegasus Insurance Services LLC
9360 W Flamingo Road, Suite 100 – #266
Las Vegas, NV 89147
United States of America

**Territorial
Scope:**    Worldwide

**Law &
Jurisdiction:**    Applicable Law (USA):
This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (USA).

**14/09/2005 LMA 5021**
Form approved by Lloyd's Market Association



**Premium:**  USD 58,476

Rate: 0.0625%

**Taxes Payable
by the Insured
& Administered
By Insurers:**  Nil

Total sum insured USD 93,561,915 as per Heather James Fine Art valuation dated 8th June 2021

No known or reported losses as at 19th November 2021

**Recording,
Transmitting
& Storing
Information:**  Where Howden maintains risk and claim data/information/documents Howden may hold data/information/documents electronically

**Security
Details:**

100%          Hiscox Syndicate 33 of Lloyd's of London



**Premium Payment Terms**

This Insurance may be cancelled in accordance with the below statement if Payment is not received by the Lloyd's Broker by:

<u>9th March 2022</u>

You undertake that the premium shown in "the Schedule" will be paid in full to the Lloyd's Broker by the date shown above.

If the premium due has not been paid to the Lloyd's Broker by the date shown above, the Underwriters shall have the right to cancel this Insurance by notifying you in writing directly or through your Insurance Agent . In the event of cancellation, premium is due to Underwriters on a pro-rata basis for the period that Underwriters are on risk but the full insurance premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this insurance.

It is agreed that the Underwriters shall give not less than 15 days prior notice of cancellation to you in writing directly or through your Insurance Agent. If premium due is paid in full before the notice period expires, notice of cancellation shall automatically be revoked. If not, this insurance shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.







## Lloyd's of London

*This is to Certify that in accordance with the authorisation granted under the Contract (the number of which is specified in the Market Schedule) to the undersigned by certain Insurers at Lloyd's, whose definitive numbers and the proportions underwritten by them, which are defined in the Market Schedule, can be ascertained by reference to the said Contract which bears the Seal of Lloyd's Policy Signing Office and in consideration of the payment of the premium specified herein, the said Insurers are hereby bound, severally and not jointly, their Executors and Administrators, to insure in accordance with the terms and conditions contained herein or endorsed hereon.*

In Witness whereof this Certificate has been signed at the place and at the date specified below;

**For And on Behalf of;**          **Howden**
                                   **One Creechurch Place, London, EC3A 5AF**

_____ Dated in London  9th February 2022





# Fine Art Insurance

## For Private Collectors

 

## Introduction

This insurance has been specially designed for **your collection. We** intend the language and layout of this **policy** to be clear because **we** want **you** to understand the cover **we** provide and **your** obligations. Many of the words and phrases **we** use have a special meaning in this **policy.** If a word or phrase is in **bold** type, please refer to the definitions section.

It is important that **you** read this **policy** document, together with any **endorsements** and the **risk details,** very carefully.  If anything is not correct, please call your insurance agent as soon as possible.

**We** will provide this insurance in return for the premium **you** have paid.

Page 1