## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JULIE SCHULZ HALBOWER, as Trustee of
THE HALBOWER LEGACY TRUST,

        Plaintiff,

    v.

HISCOX SYNDICATE 33 OF LLOYD'S OF
LONDON,

        Defendant.

Civil Action No: 22-cv-00964

### DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Hiscox Syndicate 33 of Lloyd's of London ("Hiscox"), incorrectly named and acting through its agent Hiscox Syndicates Limited, for its Answer to the Complaint filed by Plaintiff Julie Schulz Halbower, as Trustee of The Halbower Legacy Trust (the "Halbower Trust" or "Plaintiff"), responds to the allegations in the Complaint as follows:

### GENERAL DENIAL

Hiscox denies all allegations in the Complaint that are not expressly admitted herein.

### INTRODUCTION

1.     Tragically, beginning on June 2, 2022 and continuing through June 3, 2022, a fire ("June Fire") destroyed a home in Oceana County, Michigan ("Oceana County Home") which included fine art owned by Plaintiff.

**ANSWER:**    **Hiscox admits the allegations in Paragraph 1.**

1

2.     The June Fire resulted in a total loss of the Oceana County Home and its contents, including five works of fine art insured under a Fine Art Policy issued by Howden Insurance Brokers Limited ("Howden") and Hiscox and underwritten by Hiscox, Policy No. B1161HIS21K22X3019 ("Fine Art Policy" attached at Exhibit A).

**ANSWER:    Hiscox admits that it issued a policy under Policy No. B1161HIS21K22X3019 (the "Policy") to Plaintiff, and Hiscox states that the Policy should be construed based on all of its terms and conditions.  Hiscox denies that a true and correct copy of that Policy is attached to the Complaint as Exhibit A. Answering further, Hiscox admits that the Oceana County House was a total loss as a result of the June Fire.  Hiscox denies the remaining allegations in Paragraph 2, specifically denying that all five works of fine art allegedly destroyed in the June Fire were covered under the Policy.**

3.     The Oceana County Home is identified in the Fine Art Policy as one of the locations where the insured fine art was situated.

**ANSWER:    Hiscox admits that the Policy identifies a Situation at 635 N Ridge Road, Pentwater, MI 49449, United States of America but denies the remaining allegations in Paragraph 3.  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

4.     Howden is the broker and agent of Hiscox.

**ANSWER:    Hiscox admits that Howden was the Lloyd's broker on the Policy but denies the remaining allegations in Paragraph 4.**

5.     The Trust is an insured under the Fine Art Policy.

**ANSWER:    Hiscox admits that the Trust is a named insured under the Policy.  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

6.     To date, Hiscox and Howden have acknowledged coverage, with Hiscox partially reimbursing Plaintiff for three of the five works (hereafter referred to as the *Cliff,* the *Path* and the *Castle)* of art lost in the June Fire.

**ANSWER:    Hiscox admits that it has made payment in regards to the *Cliff*, the *Path*, and the *Castle* pursuant to a non-waiver agreement. Hiscox denies the remaining allegations in Paragraph 6.**

7.     However, Hiscox has refused to pay the full insured value of the *Cliff,* the *Path,* and the *Castle* and has also failed to pay for two other artworks (the *Prairie* and the *River)* destroyed in the June Fire.

**ANSWER:    Hiscox admits that it has denied coverage for the *Prairie* and the *River* consistent with the terms of the Policy.  Answering further, Hiscox denies the remaining allegations of Paragraph 7.**

8.     Hiscox has therefore breached the Fine Art Policy by refusing to pay the full insured value of all five works of art destroyed in the June Fire.

**ANSWER:    Hiscox denies the allegations contained in Paragraph 8.**

## THE PARTIES & JURISDICTION

9.     The Halbower Legacy Trust is a trust currently organized under the state of Florida and its trustee, Julie Schulz Halbower, is a citizen of New Hampshire.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.**

3

10. Hiscox, on information and belief, is a business entity organized and existing under the laws of England with their principal place of business in London, England. Hiscox is a 100% subscriber to Policy No. B1161HIS21K22X3019. In the Fine Art Policy, Defendant Hiscox consented to the jurisdiction of a court of competent jurisdiction within the United States.

**ANSWER:   Hiscox affirmatively states that it is an unincorporated association, the managing agent of which is Hiscox Syndicates Limited, a company formed and registered in England and Wales, and that Hiscox is a 100% subscriber to the Policy.  Answering further, Hiscox admits that the Policy provides that the Underwriters on the Policy "will submit to the jurisdiction of a court of competent jurisdiction within the United States", and Hiscox states that the Policy should be construed based on all of its terms and conditions.  Hiscox denies the remaining allegations of Paragraph 10.**

11. This Court has jurisdiction over the subject matter of this action pursuant to MCL 600.605 and MCR 2.605(A).

**ANSWER:   Hiscox denies the allegations contained in Paragraph 11, as this matter has been properly removed to the United States District Court for the Western District of Michigan, which has jurisdiction over this matter pursuant to 28 U.S.C. § 1332**

12. Venue is proper in this Court under MCL 600.1621 because Defendant Hiscox has done business, and continues to do business, in Oceana County, Michigan.

**ANSWER:   Hiscox denies the allegations contained in Paragraph 12, as this matter has been properly removed to the United States District Court for the Western District of Michigan, where venue is proper.**

## GENERAL ALLEGATIONS

### Plaintiff's Collection is Insured Under the Fine Art Policy

13.    Plaintiff owns a collection of fine art. Some of Plaintiff's collection hung in the Oceana County Home.

**ANSWER:    Hiscox admits the allegations contained in Paragraph 13.**

14.    In November 2021, Plaintiff sought to obtain a fine art insurance policy that would cover its fine art collection, including the artwork located in the Oceana County Home.

**ANSWER:    Hiscox admits only that Plaintiff sought and obtained the Policy. Hiscox denies the remaining allegations in Paragraph 14.**

15.    On behalf of Plaintiff, Matthew Halbower ("Mr. Halbower") worked with Tonja VanRoy at Pegasus Insurance Services LLC ("Pegasus") to obtain insurance proposals for Plaintiff's fine art collection.

**ANSWER:    Hiscox admits the allegations contained in Paragraph 15.**

16.    Pegasus is identified as the Insurance Agent in the Fine Art Policy.

**ANSWER:    Hiscox admits the allegations contained in Paragraph 16.**

17.    On November 17, 2021, Mr. Halbower emailed Ms. VanRoy a copy of a June 8, 2021 fine art appraisal ("the June 2021 Appraisal") for some of the artwork in Plaintiff's collection. As Mr. Halbower explained in the email communication to Ms. VanRoy, "[h]ere is a start"— meaning that it was the start of the list of artworks in Plaintiff's collection.

**ANSWER:    Hiscox admits only that Ms. Van Roy has asserted that the June 2021 Appraisal was obtained by Ms. Van Roy. Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17, and therefore denies them.**

18.    The June 2021 Appraisal includes the *Cliff,* the *Path* and the *Castle.*

**ANSWER:    Hiscox admits the allegations contained in Paragraph 18.**

19.    Later that same day, Mr. Halbower sent Pegasus another email that included a list of more artwork in Plaintiff's collection. The list included, among other artwork, the *Cliff*, the *Path* and the *Castle,* along with a fourth painting, the *Prairie,* that also later hung in the Oceana County Home ("November 2021 Inventory").

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and therefore denies them.**

20.    On November 18, 2021, Ms. VanRoy at Pegasus forwarded the November 2021 Inventory to Harriet Horton at Howden—Hiscox's broker.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore denies them.**

21.    Ms. Van Roy explained in her email to Howden that the November 2021 Inventory—which included the *Cliff;* the *Path,* the *Castle* and the *Prairie*—was "a follow up to [her] earlier submission, yesterday" for Plaintiff's collection. Ms. VanRoy informed Howden that she "wanted to pass [Mr. Halbower's email and the inventory] on as well as part of the submission[.]"

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies them.**

22.    On November 24, 2021, Pegasus provided the insurance proposal from Hiscox for Plaintiff's fine art collection. The proposal included a $100 million policy limit.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies them.**

23.    On January 30, 2022, Mr. Halbower emailed Pegasus: "I would like to go with Lloyd's [Hiscox] for the artwork. I want to make sure that you have an inventory of the higher price paintings." Mr. Halbower included in his January 30, 2022 email a list of the "higher price paintings" in the Halbower collection, which again included the *Cliff,* the *Path,* the *Castle* and the *Prairie,* which were all previously identified in the November 2021 Inventory. Mr. Halbower's email stated, "I am happy with the $100,000 million [sic] coverage. I don't need to modify as the art is spread out in different homes."

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies them.**

24.    On February 10, 2022, Pegasus confirmed that the fine art coverage brokered by Howden and underwritten by Hiscox was bound effective February 9, 2022. Pegasus then emailed Mr. Halbower a copy of the Fine Art Policy which is attached at **Exhibit A.**

**ANSWER:    Hiscox admits only that the Policy Period began on February 9, 2022. Hiscox denies that a true and correct copy of the Policy is attached as Exhibit A to the Complaint. Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24, and therefore denies them.**

25.    On April 5, 2022, Plaintiff received an updated appraisal ("the April 2022 Appraisal") that included the three works previously appraised in the June 18, 2021 appraisal— the *Cliff,* the *Path,* and the *Castle.* All three artworks had appreciated in value.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies them.**

26.    The April 2022 Appraisal also included an appraisal of the *Prairie.* The *Prairie* had been acquired in September of 2021, several months after the June 2021 Appraisal, but was listed

on the November 2021 Inventory sent by Pegasus to Hiscox's broker, Howden and was also listed in the January 30, 2022 email sent by Mr. Halbower to Pegasus.

**ANSWER:    Hiscox denies that Howden was its "broker" but admits that Howden was the Lloyd's broker for the Policy.  Answering further, Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26, and therefore denies them.**

27.    After receiving the April 2022 Appraisal, Mr. Halbower emailed Pegasus and stated that some of the artwork in Plaintiff's collection had been appraised at a higher value. Mr. Halbower wrote: "Just confirming that the [Fine Art Policy] is written so I can get fair market value if any 1 piece is stolen or damaged? I think I am comfortable with $100 million of coverage even though [the appraisers] think that the collection is worth more than that."

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies them.**

28.    Pegasus responded: "Yes — it will be FMV at time of loss." FMV is Fair Market Value.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies them.**

29.    Mr. Halbower forwarded a copy of the April 2022 Appraisal to Pegasus on June 3, 2022.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, and therefore denies them.**

**The Fine Art Policy**

30.    Plaintiff's Fine Art Policy states: "**We** will insure **your collection** anywhere in the world, unless otherwise stated in the **risk details**, against physical loss or physical damage which happens during the **period of insurance,** subject to the exclusions, terms, and conditions shown below." **Ex. A: The Fine Art Policy.**

**ANSWER:    Hiscox admits that the Policy states: "We will insure your collection anywhere in the world, unless otherwise stated in the risk details, against physical loss or physical damage which happens during the period of insurance, subject to the exclusions, terms, and conditions shown below."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions and denies that a true and correct copy of the Policy is attached to the Complaint as Exhibit A.**

31.    The Fine Art Policy defines "collection" as "the property shown in the risk details."

**ANSWER:    Hiscox admits that the Policy defines "collection" as "the property shown in the risk details."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

32.    There is no document or part of the policy labeled "risk details" within the Fine Art Policy.

**ANSWER:    Hiscox admits that there is no document or part of the policy labeled "risk details."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

33.    The Fine Art Policy does contain a document titled "The Schedule."

**ANSWER:    Hiscox admits that the Policy contains a document titled "The Schedule." Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

34.    However, "The Schedule" does not use the word "property" or define the word "property".

**ANSWER:    Hiscox admits that "The Schedule" does not use the word "property" and does not define the word "property."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

35.    "The Schedule" does contain the following language:

Interest: Fine Arts of whatsoever nature as defined in the attached

schedule or as may be held on file by the Lloyd's Broker

**ANSWER:    Hiscox admits that "The Schedule" contains the language "Interest: Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

36.    The Policy does not include an "attached schedule."

**ANSWER:    Hiscox admits that, based on its present knowledge, the Policy does not include an "attached schedule."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

37.    Hiscox has acknowledged that the Policy does not include an "attached schedule" and has never included an "attached schedule"

**ANSWER:    Hiscox admits that, based on its present knowledge, the Policy does not include an "attached schedule" and that this position has been communicated to Plaintiff and**

representatives of Plaintiff.  Hiscox states that the Policy should be construed based on all of its terms and conditions.  Answering further, Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 37, and therefore denies them.

38.    No "attached schedule" was ever communicated to Plaintiff or Mr. Halbower and no list of what "may be" held on file by the Lloyd's Broker was ever communicated to Plaintiff or Mr. Halbower.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38, and therefore denies them.**

39.    As for coverage, the Fine Art Policy states: "If an item is lost or destroyed **we** will pay the amount insured of that item as shown in the basis of the valuation above."

**ANSWER:    Hiscox admits that the Policy states: "If an item is lost or destroyed we will pay the amount insured of that item as shown in the basis of the valuation above."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

40.    The "[b]asis of valuation," in turn, is divided into two categories—"Listed items" and "Unlisted items."

**ANSWER:    Hiscox admits that the Policy contains, in the "Basis of valuation," two categories—"Listed items" and "Unlisted "items."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

41.    The Fine Art Policy states that the Basis of Valuation for Listed Items is: **"Listed items —** For items which are listed individually in the specification held by us or **your** insurance agent, the value is the amount insured shown for each item."

**ANSWER:    Hiscox admits that the Policy states: "Listed items—For items which are listed individually in the specification held by us or your insurance agent, the value is the amount insured for each item."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

42.    There is no definition of "specification" contained in the Fine Art Policy.

**ANSWER:    Hiscox admits there is no definition of "specification" in the Policy.  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

43.    However, both Howden and Pegasus were in possession of the November 2021 Inventory prior to Hiscox binding coverage.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and therefore denies them.**

44.    The Fine Art Policy does not provide an "amount insured" for any of the "listed items" in the "collections." Instead, the Fine Art Policy simply provides a total sum insured.

**ANSWER:    Hiscox admits that the Policy itself does not provide an amount insured for any one "listed item" but does provide a total sum insured.  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

45.    The Fine Art Policy states that the Basis of Valuation for Unlisted Items is: "**Unlisted items** - For items which are not individually listed in the specification held by **us** or **your** insurance agent, the value is the market value of the items on the date of loss."

**ANSWER:    Hiscox admits that the Policy states: "Unlisted items – For items which are not individually listed in the specification held by us or your insurance agent, the value is the**

12

**market value of the items on the date of loss."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

46.    Accordingly, the Fine Art Policy covers both listed and unlisted Fine Arts of whatsoever nature.

**ANSWER:    Hiscox denies that the Policy covers both listed and unlisted Fine Arts of whatsoever nature.  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

47.    The "[t]otal amount payable" under the Fine Art Policy is "[t]he most **we** will pay in total for each incident of loss is the **total amount insured** plus any additional expenses as described above." The "total amount insured" is defined as "[t]he most we will pay for each incident of loss as shown in the **risk details**."

**ANSWER:    Hiscox admits that the Policy states: "The most we will pay in total for each incident of loss is the total amount insured plus any additional expenses as described above" and that the "total amount insured" is defined as "The most we will pay for each incident of loss as shown in the risk details."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

48.    The Schedule provides that the "Sum Insured" is "USD 93,561,915 increasing up to USD 115,000,000 as per the New Possession clause detailed in the policy wording."

**ANSWER:    Hiscox admits that the Policy states that the "Sum Insured" is "USD 93,561,915 increasing up to USD 115,000,000 as per the New Possession clause detailed in the policy wording."  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

49.    The loss incurred as a result of the June Fire is less than the Sum Insured under the Fine Art Policy.

**ANSWER:    Hiscox admits that the amount claimed by the Plaintiff for the loss incurred as a result of the June Fire is less than the Sum Insured under the Fine Art Policy.  Answering further, Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 and therefore denies them.**

### A Fire at the Oceana County Home Destroys Four Works of Art Insured Under the Fine Art Policy

50.    The June Fire destroyed the Oceana County Home and all of its contents.

**ANSWER:    Hiscox admits the allegations contained in Paragraph 50.**

51.    Five works of art insured under the Fine Art Policy were destroyed in the June Fire. Four of the five works of art — the *Cliff,* the *Path,* the *Castle* and the *Prairie* were listed in the November 2021 Inventory.

**ANSWER:    Hiscox denies that five works of art insured under the Policy were destroyed in the June Fire.  Answering further, Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 51, and therefore denies them.**

52.    On June 3, 2022, Mr. Halbower informed Pegasus of the loss as required under the Fine Art Policy.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and therefore denies them.**

53.    On June 3, 2022, Pegasus notified Howden of the loss and Hiscox has agreed that a claim for the *Cliff,* the *Path,* the *Castle,* and the *Prairie* was fully filed as of June 3, 2022.

**ANSWER:    Hiscox admits that Plaintiff has made a claim with respect to the *Cliff,* the *Path,* the *Castle,* and the *Prairie* on or about June 3, 2022. Answering further, Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 53, and therefore denies them.**

54.    On June 4, 2022, Pegasus resent to Howden the November 202 Inventory of Plaintiff's fine art—which listed the *Cliff,* the *Path,* the *Castle,* and the *Prairie* which were all destroyed in the June Fire.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, and therefore denies them.**

55.    On the same day, Pegasus provided to Howden a list ("Pegasus List") containing the insured value of each item listed as established by the April 2022 Appraisal.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 55, and therefore denies them.**

56.    The Pegasus List establishes the amount insured for the *Cliff,* the *Path,* the *Castle,* and the *Prairie.*

**ANSWER:    Hiscox denies the allegations contained in Paragraph 56.**

57.    Because Pegasus was Plaintiff's "insurance agent" and the Pegasus List contained the "value" of each item destroyed by the fire, it provides the "Basis of Valuation" for "Listed Items" as defined in the Fine Art Policy.

**ANSWER:    Hiscox denies the allegations contained in Paragraph 57.**

58.    Despite numerous communications from Pegasus and Mr. Halbower attempting to confirm coverage under the Fine Art Policy, neither Howden nor Hiscox responded for six weeks.

**ANSWER:    Hiscox denies the allegations contained in Paragraph 58.**

**Hiscox's July 18, 2022 Coverage Letter & Incomplete Coverage**

59.     On July 18, 2022, Hiscox sent a coverage letter to Plaintiff acknowledging coverage under the Fine Art Policy for three of the five works destroyed in the June Fire. Hiscox's letter, however, reserved its rights for covering the *Prairie,* pending its investigation.

**ANSWER:    Hiscox admits that it caused to have sent, on its behalf, correspondence to Plaintiff, which correspondence speaks for itself, and Hiscox denies the allegations in Paragraph 59 to the extent they are inconsistent with the correspondence.**

60.     Hiscox stated that the *Cliff,* the *Path* and the *Castle* were covered under the Fine Art policy "at the values set forth in that [June 2021] appraisal."

**ANSWER:    Hiscox admits that it caused to have sent, on its behalf, correspondence to Plaintiff, which correspondence speaks for itself, and Hiscox denies the allegations in Paragraph 60 to the extent they are inconsistent with the correspondence.**

61.     On or about August 4, 2022, Hiscox partially paid out the claim to Plaintiff in the amounts listed for the *Cliff,* the *Path* and the *Castle* on the June 2021 Appraisal.

**ANSWER:    Hiscox admits only that it has made the following payments pursuant to a non-waiver agreement:**

> **a.  USD 15,000,000 for the *Cliff***
>
> **b.  USD 16,000,000 for the *Path*;**
>
> **c.  USD 333,315 for the *Castle*.**

**Answering further, Hiscox denies the remaining allegations contained in Paragraph 61.**

62.     There is nothing contained in the Fine Art Policy that limits the valuation of Plaintiff's collection to the amounts shown on the June 2021 Appraisal.

**ANSWER:    Hiscox denies the allegations contained in Paragraph 62.**

63.    In fact, the only reference in the Fine Art Policy to the June 2021 Appraisal appears in the Schedule in reference to the total sum insured.

**ANSWER:    Hiscox denies the allegations contained in Paragraph 63.  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

64.    Instead, the Fine Art Policy states that the Basis of Valuation for Listed Items is the "value" held by the "Insurance Agent" "for each item" which is the value contained on the Pegasus List which is supported by the April 2022 Appraisal.

**ANSWER:    Upon information and belief, Hiscox denies that the April 2022 Appraisal was held by Pegasus prior to the claim and, therefore, denies that the April 2022 Appraisal provides any basis of the value of any artworks.  Answering further, the Policy speaks for itself, and Hiscox denies the allegations in Paragraph 64 to the extent they are inconsistent with the Policy**

65.    Additionally, Hiscox, refused to cover *Prairie,* which was contained in the November 2021 Inventory, on the basis that it was "not held on file" by Howden, despite the fact that Howden received the November 2021 Inventory from Pegasus on November 18, 2021.

**ANSWER:    Hiscox admits that it has denied coverage for the *Prairie* because, upon information and belief, it was not held on file by Howden as required under the terms of the Policy but denies that any coverage denial was contained in the July 18, 2022 correspondence, as Hiscox's investigation was ongoing at that time.  Answering further, Hiscox denies the remaining allegations contained in Paragraph 65.**

66.    In its refusal to cover *Prairie,* Hiscox stated that it was "still investigating whether there is coverage," and therefore Hiscox "reserve[d] all rights with regards to coverage for that artwork."

**ANSWER:    Hiscox admits that it stated in correspondence that it was "still investigating whether there is coverage" and reserved its rights.  Answering further, Hiscox denies any remaining allegations contained in Paragraph 66.**

67.    Hiscock [sic] has refused to pay the full value of the *Cliff,* the *Path* and the *Castle* established by the Pegasus List.

**ANSWER:    Hiscox admits only that it made payments pursuant to a non-waiver agreement.    Answering further, Hiscox denies the remaining allegations contained in Paragraph 67.**

68.    Hiscock [sic] has refused to provide coverage for the *Prairie,* despite it being included in the November 2021 Inventory and its value established in the Pegasus List.

**ANSWER:    Hiscox admits that it has denied coverage for the *Prairie*.  Answering further, Hiscox lacks knowledge or information sufficient to form a belief as to the truth of *Prairie* being included in any inventory, and therefore denies those allegations.  Hiscox denies the remaining allegations in Paragraph 68.**

69.    Hiscock [sic] has also refused to cover the *River,* an unlisted item, destroyed in the June Fire.

**ANSWER:    Hiscox admits that it has denied coverage for the *River*. Hiscox denies the remaining allegations in Paragraph 69.**

70.    The River was valued in an August 2022 appraisal.

**ANSWER:    Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 70, and therefore denies them.**

71.     Hiscock [sic] has breached its obligations under the Fine Art Policy by refusing to pay for the full insured value of the *Cliff,* the *Path,* and the *Castle* and by refusing to pay anything for the *Prairie* and the *River* destroyed in the June Fire.

**ANSWER:     Hiscox denies the allegations contained in Paragraph 71.**

## COUNT I: BREACH OF CONTRACT

72.     Plaintiff incorporates by reference the preceding paragraphs.

**ANSWER:     Hiscox incorporates its answers to the preceding paragraphs as if set forth in full here.**

73.     Plaintiff is an insured under the Fine Art Policy. The Fine Art Policy covers a period of insurance from February 9, 2022 to February 9, 2023.

**ANSWER:     Hiscox admits the allegations contained in Paragraph 73.**

74.     Five works of art covered under the Fine Art Policy, four "listed items" and one "unlisted item," were destroyed in the June Fire, during the period of insurance.

**ANSWER:     Upon information and belief, Hiscox admits that certain artworks were destroyed in the June Fire, which fire occurred during the effective period of the Policy. Answering further, Hiscox denies the allegations contained in Paragraph 74.**

75.     The Fine Art Policy covered all four listed artworks—the *Cliff;* the *Path,* the *Castle,* and the *Prairie*—at the values established for each in the Pegasus List (as supported by the April 2022 Appraisal) and provided to Howden and Hiscox.

**ANSWER:     Hiscox denies the allegations contained in Paragraph 75.**

76.     The Fine Art Policy further covers the *River*—an unlisted artwork—at its market value on June 2, 2022.

19

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 76.**

77.    Hiscox has breached the Fine Art Policy by refusing to provide coverage for the four listed items at the values set forth in the Pegasus List.

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 77.**

78.    Alternatively, to the extent any one of the listed items identified herein are determined to be unlisted items, Hiscox has breached the Fine Art Policy by refusing to provide coverage for any such unlisted item at its market value as of June 2, 2022.

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 78.**

79.    Hiscox has breached the Fine Art Policy by refusing to provide coverage for the unlisted item, the *River,* at its market value as of June 2, 2022.

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 79.**

80.    Plaintiff is entitled to damages as a result of Hiscox's breach of the Fine Art Policy.

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 80.**

81.    Pursuant to MCL 500.2006(4), Plaintiff is further entitled to simple interest at the rate of 12% per annum on the unpaid amount of Plaintiffs claim beginning August 3, 2022.

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 81.**

In response to Plaintiff's request for relief, Hiscox denies each and every allegation contained therein, and specifically denies that Plaintiff is entitled to its requested relief.

## COUNT II: DECLARATORY JUDGMENT

82.    Plaintiff incorporates by reference the preceding paragraphs.

**ANSWER:**    **Hiscox incorporates its answers to the preceding paragraphs as if set forth in full here.**

83.     The facts and circumstances set forth above in this Complaint present an actual controversy regarding the rights and legal relations of the parties.

**ANSWER:     Hiscox admits the allegations contained in Paragraph 83.**

84.     The rights of the parties can only be determined by a declaratory judgment.

**ANSWER:     Hiscox denies the allegations contained in Paragraph 84.**

85.     The *Cliff,* the *Path,* the *Castle,* and the *Prairie,* which were destroyed in the June Fire, are "listed items" as part of Plaintiff's "collection anywhere in the world" and are insured under the Fine Art Policy.

**ANSWER:     Upon information and belief, Hiscox admits that certain artworks were destroyed in the June Fire.  Answering further, the Policy speaks for itself, and Hiscox denies the allegations in Paragraph 85 to the extent they are inconsistent with the Policy and further denies the remaining allegations contained in Paragraph 85.**

86.     As "listed items," the basis of valuation for all four artworks is "the amount insured shown for each item."

**ANSWER:     Hiscox denies the allegations in Paragraph 86.  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

87.     There is no "amount *insured* shown" for any of the four artworks in the Fine Art Policy.

**ANSWER:     Hiscox admits that there is no amount shown for any individual artwork in the Policy.  Answering further, Hiscox states that the Policy should be construed based on all of its terms and conditions.**

88.     Accordingly, The Pegasus List, held by Pegasus as Plaintiff's insurance agent, establishes the values for each of the *Cliff,* the *Path,* the *Castle,* and the *Prairie.*

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 88.**

89.    The Pegasus List has been provided to Howden and Hiscox.

**ANSWER:**    **Hiscox admits only that it was provided with certain lists after the June Fire. Hiscox lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 89 and therefore denies them.**

90.    Hiscox is required to provide coverage for the four listed items at the values established in the Pegasus List which incorporates the values shown in the April 2022 Appraisal.

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 90.**

91.    Alternatively, if any of the four listed items are deemed to be "unlisted items," they must be valued at their market value at the time of loss.

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 91.**

92.    The market value, as of June 2, 2022, for the four artworks contained in the November 2021 Inventory is properly determined by the April 2022 Appraisal.

**ANSWER:**    **Hiscox denies the allegations contained in Paragraph 92.**

93.    Either as "listed items" or as "unlisted items," the *Cliff,* the *Path,* the *Castle,* and the *Prairie,* all of which were included on the November 2021 Inventory and were destroyed in the June Fire, are covered under the Fine Art Policy.

**ANSWER:**    **Upon information and belief, Hiscox admits that certain artworks were destroyed in the June Fire.  Answering further, the Policy speaks for itself, and Hiscox denies the allegations in Paragraph 93 to the extent they are inconsistent with the Policy and further denies the remaining allegations contained in Paragraph 93.**

94.    *The River,* which was also destroyed in the June Fire, is covered as an "unlisted item" under the Fine Art Policy and must be valued at its market value on the date of loss.

**ANSWER:    Hiscox denies the allegations in Paragraph 94.**

95.    The August 2022 Appraisal sets forth the market value for the *River* on the date of loss.

**ANSWER:    Hiscox denies the allegations contained in Paragraph 95.**

96.    In breach of the Fine Art Policy, Hiscox has only partially covered the loss of the *Cliff,* the *Path* and the *Castle,* in contradiction of the valuation provisions contained in the Fine Art Policy.

**ANSWER:    Hiscox denies the allegations in Paragraph 96.**

97.    In breach of the Fine Art Policy, Hiscox has refused to provide coverage for the *Prairie* and the *River.*

**ANSWER:    Hiscox admits that it has denied coverage for the *Prairie* and the *River*.  Hiscox denies the remaining allegations contained in Paragraph 97.**

98.    Hiscox is obligated to cover the *Cliff;* the *Path,* the *Castle* and the *Prairie* at the values set forth in the Pegasus List and the unlisted item at the value established in the August 2022 Appraisal.

**ANSWER:    Hiscox denies the allegations contained in Paragraph 98.**

99.    Based on the foregoing, there is an actual controversy between the parties, and pursuant to MCR 2.605(A), this Court may declare the legal rights and obligations of the parties.

**ANSWER:    Hiscox admits only that an actual controversy exists between the parties under the Policy, but denies the remaining allegations in Paragraph 99.**

In response to Plaintiff's request for relief, Hiscox denies each and every allegation contained therein, and specifically denies that Plaintiff is entitled to its requested relief.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Hiscox requests judgment as follows:

1. Plaintiff takes nothing by reason of her claims;

2. That judgment be entered in favor of Hiscox:

3. That the Court grant Hiscox such other and further relief as it may deem just and proper.

## **<u>AFFIRMATIVE AND OTHER DEFENSES</u>**

Hiscox, by way of further answer, affirmative and other defenses does allege and state the defenses enumerated below.  By stating these defenses, Hiscox does not concede that it has the burden of proof or the burden of coming forward with evidence as to any such defense. Furthermore, all such defenses are pled in the alternative, and do not constitute an admission of liability or that Plaintiff is entitled to any relief whatsoever.  Hiscox reserves the right to raise additional defenses as additional information comes to light.

<u>FIRST DEFENSE</u>

Plaintiff's causes of action are insufficient in law and fail to state a claim against Hiscox upon which relief may be granted.

<u>SECOND DEFENSE</u>

Plaintiff's claims are barred to the extent that Plaintiff failed to satisfy the obligations, covenants, and conditions precedent and subsequent required under the Policy.

<u>THIRD DEFENSE</u>

Plaintiff's claims are barred, in whole or in part, by the terms, conditions, agreements, exclusions, definitions, limitations and/or endorsements contained the Policy.

<u>FOURTH DEFENSE</u>

Any recovery for Plaintiff's claims is limited by all applicable terms, conditions, and provisions, and all deductibles, limits, including time limits, occurrence, and sub-limits in the Policy.

<u>FIFTH DEFENSE</u>

Coverage for Plaintiff's claims is barred, in whole or in part, to the extent Plaintiff has waived or to the extent Plaintiff is estopped to assert rights under the Policy.

<u>SIXTH DEFENSE</u>

Coverage for Plaintiff's claims is barred, in whole or in part, to the extent Plaintiff's claims include recovery for property excluded under the Policy.

<u>SEVENTH DEFENSE</u>

Plaintiff's failure to mitigate, minimize, or otherwise avoid any losses or damages, reduces a recovery against Hiscox.

<u>EIGHTH DEFENSE</u>

Plaintiff's claims are barred, in whole or in part, by payments made, previously and in the future, by Hiscox.

<u>NINTH DEFENSE</u>

Plaintiff's claims are barred, in whole or in part, due to spoliation of evidence by Plaintiff and Plaintiff's agent.

<u>TENTH DEFENSE</u>

Plaintiff incorrectly named Hiscox Syndicate 33 as Defendant instead of Hiscox Syndicates Limited as agent for Hiscox Syndicate 33.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Hiscox requests judgment as follows:

1.  Plaintiff takes nothing by reason of her claims;

2.  That judgment be entered in favor of Hiscox:

3.  That the Court grant Hiscox such other and further relief as it may deem just and proper.

## COUNTERCLAIM

## NATURE OF ACTION

1.       Hiscox Syndicate 33 of Lloyd's of London ("Hiscox"), acting through its agent, Hiscox Syndicates Limited, seeks a declaration of the parties' rights and obligations pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201-2202 with respect to a policy of insurance issued to Plaintiff/Counter-Defendant and requests for coverage made by Plaintiff/Counter-Defendant under that policy.

## PARTIES

2.       Defendant/Counter-Plaintiff Hiscox is an unincorporated association, the managing agent of which is Hiscox Syndicates Limited, a company formed and registered in England and Wales.

3.       Plaintiff/Counter-Defendant, the Halbower Legacy Trust, is a trust organized under the state of Florida and its trustee, Julie Schulz Halbower, is a citizen of New Hampshire.

## THE HISCOX POLICY

4.       Hiscox issued Private Fine Art Insurance Policy No. B1161HIS21K22X3019 to Matthew and Julie Halbower and/or Halbower Legacy Trust for the policy period of February 9, 2022 to February 9, 2023 (the "Policy").  A true and accurate copy of the Policy as it was on the date of the alleged loss at issue in this matter is attached as **Exhibit A**.

5.       The Policy's "Schedule" states the following, in relevant part:

Insurance Agent:       Pegasus Insurance Services LLC
9360 W Flamingo Road, Suite 100 - #266
Las Vegas, NV 89147
United States of America

| | |
|---|---|
| Insured: | Matthew and Julie Halbower and/or Halbower Legacy Trust for their respective rights and interests |
| Address: | 40 Devonshire Lane, Kenilworth, IL 60043, United States of America |
| Period: | 9th February 2022 at Local Standard Time to 8th February 2023 at Local Standard Time, both days inclusive |
| … | |
| Interest: | Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker |
| Sum Insured: | USD 93,561,915 increasing up to USD 115,000,000 as per the New Possessions clause detailed within the policy wording |

*     *     *

6.      The Policy's "Schedule" states that the "Total sum insured USD 93,561,915 as per Heather James Fine Art valuation dated 8th June 2021."

7.      Plaintiff/Counter-Defendant obtained an Art Appraisal on June 8, 2021 (the "June 8, 2021 Art Appraisal").

8.      The "Heather James Fine Art valuation dated 8th June 2021" to which the Policy refers is the June 8, 2021 Art Appraisal.

9.      The Policy contains the following relevant provisions:

**The Cover**

| | |
|---|---|
| **What is covered** | **We** will insure **your collection** anywhere in the world, unless otherwise stated in the **risk details**, against physical loss or damage which happens during the **period of insurance**, subject to the exclusions, terms and conditions shown below. |

**Basis of valuation**

|                |                                                                                       |
|----------------|---------------------------------------------------------------------------------------|
| **Listed Items** | For items which are listed individually in the specification held by **us** or **your** insurance agent, the value is the amount insured shown for each item. |

10.    "Risk details" is defined under the Policy as: "The document showing **your** name, **your** address and **your** insurance details that **we** sent **you** when **we** accepted this insurance or following any subsequent amendment to **your** cover, whichever is more recent," which constitutes the "Schedule" described in Paragraph 7 of this Counterclaim.

11.    The Policy defines "We", "us", and "our" as "Syndicate 33 at Lloyd's. . . ."

12.    The Policy defines "you" and "your" as "[t]he insured shown in the **risk details**."

13.    Pegasus Insurance Services LLC is the insurance agent for the insured, Matthew and Julie Halbower and/or Halbower Legacy Trust for their respective rights and interests, in relation to the Policy.

14.    Howden is the Lloyd's broker in relation to the Policy.

## **CLAIM**

15.    On or about June 2, 2022, a fire started at Plaintiff/Counter-Defendant's residence at 6635 N Ridge Road in Pentwater, Michigan. Four artworks that were included in the June 8, 2021 Art Appraisal were destroyed in the fire: (1) the "*Path*"; (2) the "*Cliff*"; (3) the "*Castle*"; and (4) the "*Line Drawing*".

16.    Plaintiff/Counter-Defendant also reported that a painting, the "*Prairie*", was also destroyed inside the home at the time of the fire. *Prairie* was not included on the June 8, 2021 Art Appraisal.

17.    Plaintiff/Counter-Defendant sought coverage for all five artworks referenced in paragraphs 15 and 16, above.

18.    On July 18, 2022, Hiscox issued correspondence confirming coverage for the *Path*, the *Cliff*, and the *Castle*, at the values included for those paintings on the June 8, 2021 Art Appraisal, for which Hiscox made a payment of USD 31,333,315.

19.    Hiscox issued correspondence confirming coverage for the *Line Drawing*.

20.    *Prairie* was not identified in the June 8, 2021 Art Appraisal specified in the Policy, as required under the terms of the Policy. Accordingly, Hiscox denied coverage with respect to the *Prairie*.

21.    To date, Plaintiff/Counter-Defendant has not produced any evidence that an inventory or other document was transmitted to Howden seeking to add the *Prairie* to the Policy.

22.    To date, Plaintiff/Counter-Defendant has not produced any evidence that Howden maintained on file a document that included the *Prairie* as a covered artwork under the Policy.

23.    Matthew and Julie Halbower and/or the Plaintiff/Counter-Defendant allegedly obtained a subsequent appraisal performed on March 22, 2022 (the "March 22, 2022 Art Appraisal"), which purported to significantly increase the values of the *Path*, the *Cliff*, and the *Castle*.

24.    The March 22, 2022 Art Appraisal was never sent to Howden, Hiscox, or Pegasus prior to the loss. Instead, the March 22, 2022 Art Appraisal was sent to Pegasus on June 3, 2022, immediately following the loss.

25.    Despite that the March 22, 2022 Art Appraisal was never sent to Howden, Hiscox, or Pegasus, Plaintiff/Counter-Defendant asserts that the March 22, 2022 Art Appraisal, not the June 8, 2021 Art Appraisal specified in the Policy, determines the valuation of the *Path*, the *Cliff*, and the *Castle*.

26.    On August 19, 2022, Plaintiff/Counter-Defendant indicated to Hiscox via email that an additional claim would be made under the Policy for a painting the "*HH*" that was allegedly destroyed in the June 2, 2022 fire, but was not included in the June 8, 2021 Art Appraisal.

27.    The *HH* was not on file with Pegasus, Howden, or Hiscox at the time of the loss.

## COUNT I – DECLARTORY JUDGMENT

### *The Path, the Cliff, the Castle and the Line Drawing Must be Valued Pursuant to the June 8, 2021 Art Appraisal*

28.    Hiscox reasserts and incorporates by reference Paragraphs 1 through 27 of its Counterclaim as if fully set forth herein.

29.    The Policy's "Basis of Valuation" Provision provides that Listed items are valuated based on the amount shown for each artwork in the specification held by Pegasus or Howden.

30.    The *Path*, the *Cliff*, the *Castle* and the *Line Drawing* were each identified in the June 8, 2021 Art Appraisal.

31.    Pegasus, Howden and Hiscox did not possess the March 22, 2022 Art Appraisal at the time of the loss.

32.    The only document providing values for the *Path*, the *Cliff*, the *Castle* and the *Line Drawing* in the possession of Pegasus, Howden, or Hiscox at the time of the loss was the June 8, 2021 Art Appraisal.

33.    The June 8, 2021 Art Appraisal dictates the proper valuation for the *Path*, the *Cliff*, the *Castle* and the *Line Drawing.*

34.    The June 8, 2021 Art Appraisal provides the following values:

a.    USD 15,000,000 for the *Cliff*;

b.    USD 16,000,000 for the *Path*;

c.    USD 333,315 for the *Castle*;

    d.       USD 1,600 for the *Line Drawing.*

35.      There is no basis under the Policy for the *Path*, the *Cliff*, the *Castle* and the *Line Drawing* to be valued based upon anything but the June 8, 2021 Art Appraisal, including the March 22, 2022 Art Appraisal or the market value of those paintings at the time of the loss.

36.      Based on the values of the *Path*, the *Cliff*, and the *Castle* provided in the June 8, 2021 Art Appraisal, Hiscox has made the following payments to Plaintiff:

    a.       USD 15,000,000 for the *Cliff*;

    b.       USD 16,000,000 for the *Path*;

    c.       USD 333,315 for the *Castle*.

37.      Based on the value of the *Line Drawing* provided in the June 8, 2021 Art Appraisal, Hiscox has offered to make payment to Plaintiff in the amount of USD 1,600.

38.      There is a bona fide dispute, and an actual controversy and disagreement exists, between Hiscox and the Plaintiff/Counter-Defendant concerning whether the *Path*, the *Cliff*, the *Castle* and the *Line Drawing* must be valued under the June 8, 2021 Art Appraisal.

**WHEREFORE**, for the reasons set forth above, Hiscox respectfully requests that this Court:

    a.   Declare that the June 8, 2021 Art Appraisal sets forth the proper valuation of the *Path*, the *Cliff*, the *Castle* and the *Line Drawing* under the Policy;

    b.   Declare that the March 22, 2022 Art Appraisal, provided to Howden the day after the loss, does not constitute the proper valuation under the Policy with respect to Plaintiff's claim for coverage of the *Path*, the *Cliff*, the *Castle* and the *Line Drawing*;

    c.   Declare that Hiscox owes no further sums to Plaintiff or any other insured under the Policy for the claims made for the *Path*, the *Cliff*, the *Castle* and the *Line Drawing*;

    d.   Award Hiscox any other relief that this Court deems just and appropriate.

## <u>COUNT II – DECLARATORY JUDGMENT</u>

***Plaintiff/Counter-Defendant is Not Entitled to Coverage for the Prairie Because It Was Not on File with Howden as Required Under the Policy***

39.     Hiscox reasserts and incorporates by reference Paragraphs 1 through 38 of its Counterclaim as if fully set forth in full here.

40.     Plaintiff/Counter-Defendant provided notice of the loss of the *Prairie* on or about June 3, 2022 to Pegasus.

41.     The Policy's "Schedule" states that the insured interest constitutes "Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker."

42.     The June 8, 2021 Art Appraisal was the only document provided to Howden providing a list of artwork to be covered by the Policy.

43.     The *Prairie* was not specified on the June 8, 2021 Art Appraisal.

44.     Thus, the *Prairie* was not held on file by Howden as required under the Policy.

45.     The *Prairie* was not considered by Howden or Hiscox in determining the limit of Liability of the Policy or the applicable premium.

46.     Plaintiff/Counter-Defendant is not entitled to coverage under the Policy for the *Prairie*.

47.     There is a bona fide dispute, and an actual controversy and disagreement exists, between Hiscox and the Plaintiff/Counter-Defendant concerning whether Plaintiff/Counter-Defendant is entitled to coverage for the *Prairie*.

**WHEREFORE**, for the reasons set forth above, Hiscox respectfully requests that this Court:

a.   Declare that the Policy does not provide coverage for the *Prairie*;

    b.   Declare that Hiscox owes nothing to Plaintiff or any insured under the Policy for the claim made for the *Prairie*;

    c.   Award Hiscox any other relief that this Court deems just and appropriate.

### <u>COUNT III – DECLARATORY JUDGMENT</u>

***Plaintiff/Counter-Defendant is Not Entitled to Coverage for the HH Because It was Not on File with Howden as Required Under the Policy***

48.    Hiscox reasserts and incorporates by reference Paragraphs 1 through 47 of its Counterclaim as if fully set forth herein.

49.    On August 19, 2022, Plaintiff/Counter-Defendant indicated to Hiscox via email that an additional claim would be made under the Policy for the *HH* which was allegedly destroyed in the June 2, 2022 fire, but was not included in the June 8, 2021 Art Appraisal nor the March 22, 2022 Art Appraisal.

50.    No document had ever been provided to Howden or Hiscox seeking to add the *HH* to the Policy prior to the June 2, 2022 fire.

51.    Pegasus, Howden, and Hiscox were never provided any document purporting to reflect that the *HH* was covered under the Policy.

52.    The *HH* was not held on file by Howden as required for coverage under the Policy.

53.    The *HH* was not considered by Howden or Hiscox in determining the limit of Liability of the Policy or the applicable premium.

54.    Plaintiff/Counter-Defendant is not entitled to coverage under the Policy for the *HH*.

55.    There is a bona fide dispute, and an actual controversy and disagreement exists, between Hiscox and the Plaintiff/Counter-Defendant concerning whether Plaintiff/Counter-Defendant is entitled to coverage for the *HH*.

**WHEREFORE**, for the reasons set forth above, Hiscox respectfully requests that this Court:

      a.  Declare that the Policy does not provide coverage for the *HH*;

      b.  Declare that Hiscox owes nothing to Plaintiff or any insured under the Policy for the claim made for the *HH*;

      c.  Award Hiscox any other relief that this Court deems just and appropriate

## <u>JURY DEMAND</u>

Hiscox demands a trial by jury of all issues so triable.

Dated:  November 4, 2022           Respectfully submitted,

                               By: <u>/s/Clinton E. Cameron</u>
                               Clinton E. Cameron (P45567)
                               CLYDE & CO US LLP
                               55 West Monroe, Suite 3000
                               Chicago, IL 60603
                               T: (312) 635-7000
                               F: (312) 635-6950
                               E: clinton.cameron@clydeco.us
                               E: alexander.ross@clydeco.us
                               *Attorneys for Hiscox Syndicate 33 of Lloyd's of London*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 4, 2022, a true and correct copy of the foregoing Defendant's Answer To Plaintiff's Complaint was filed electronically via the Court's CM/ECF electronic filing system.  Notice of this filing will be provided to all counsel of record via the Court's CM/ECF system.

s/ Clinton E. Cameron