UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE SCHULZ HALBOWER, as Trustee
of THE HALBOWER LEGACY TRUST,

      Plaintiff/Counter-Defendant,

v.

HISCOX SYNDICATE 33 OF LLOYD'S
OF LONDON,

      Defendant/Counter-Plaintiff.

Case No. 1:22-cv-00964

Hon. Robert J. Jonker

| | |
|---|---|
| Ronald G. DeWaard (P4117) | Clinton E. Cameron (P45567) |
| Brion B. Doyle (P67870 | Alexander Ross |
| VARNUM LLP | Courtney Dawn Logli |
| *Attorneys for Plaintiff/Counter-Defendant* | CLYDE & CO US LLP |
| Bridgewater Place, P.O. Box 352 | *Attorneys for Defendant/Counter-Plaintiff* |
| Grand Rapids, MI  49501-0352 | 55 West Monroe, Suite 300 |
| (616) 336-6000 | Chicago, IL  60603 |
| rgdewaard@varnumlaw.com | (312) 635-7000 |
| bbdoyle@varnumlaw.com | Clinton.cameron@clydeco.us |
| | Alexander.ross@clydeco.us |
| | Courtney.logli@clydeco.us |

## PLAINTIFF/COUNTER-DEFENDANT'S FIRST AMENDED COMPLAINT AND JURY DEMAND

      Plaintiff/Counter-Defendant Julie Schulz Halbower, as Trustee of the Halbower Legacy Trust ("Plaintiff"), states for her First Amended Complaint as follows:

## INTRODUCTION

      1.     Tragically, beginning on June 2, 2022 and continuing through June 3, 2022, a fire ("June Fire") destroyed the Halbowers' family home in Oceana County, Michigan ("Oceana County Home") which included fine art owned by Plaintiff, the Halbower Legacy Trust ("Plaintiff" or the "Trust").

2.     The June Fire resulted in a total loss of the Oceana County Home and its contents, including five works of fine art insured under a Fine Art Policy issued by Howden Insurance Brokers Limited ("Howden") and Hiscox and underwritten by Hiscox, Policy No. B1161HIS21K22X3019 ("Fine Art Policy" attached at **Exhibit A**).  These five works of art are referred to herein as the *Cliff*, the *Path*, the *Castle*, the *Prairie*, and the *River*.

3.     The Oceana County Home is identified in the Fine Art Policy as one of the locations where the insured fine art was situated.

4.     The Trust is an insured under the Fine Art Policy.

5.     To date, Hiscox and Howden have acknowledged coverage and Hiscox has partially reimbursed Plaintiff for three of the five destroyed works of art, the *Cliff*, the *Path,* and the *Castle*. Hiscox, however, has refused to pay the full insured value of the *Cliff*, the *Path,* and the *Castle.*

6.     Hiscox has completely denied coverage for and refused to pay for the other two works of art destroyed in the June Fire, namely the *Prairie* and the *River*.

7.     Hiscox has therefore breached the Fine Art Policy by refusing to pay the full insured value of all five works of art destroyed in the June Fire.

**THE PARTIES**

8.     The Trust is a trust currently organized under the state of Florida, and its trustee, Julie Schulz Halbower, is a citizen of Florida.

9.     Hiscox, on information and belief, is a business entity organized and existing under the laws of England with its principal place of business in London, England. Hiscox is a 100% subscriber to Policy No. B1161HIS21K22X3019. In the Fine Art Policy, Defendant Hiscox consented to the jurisdiction of a court of competent jurisdiction within the United States.

## GENERAL ALLEGATIONS

### Plaintiff's Collection is Insured Under the Fine Art Policy

10.     Plaintiff owns a collection of fine art. Some of Plaintiff's collection hung in the Oceana County Home.

11.     In November 2021, Plaintiff sought to obtain a fine art insurance policy that would cover a fine art collection, including the artwork located in the Oceana County Home.

12.     On behalf of Plaintiff, Matthew Halbower ("Mr. Halbower") worked with Tonja VanRoy at Pegasus Insurance Services LLC ("Pegasus") to obtain insurance proposals for Plaintiff's fine art collection.

13.     Pegasus is an insurance broker.

14.     With limited exceptions, Hiscox and Howden cannot sell insurance policies in the United States without working through a broker based in the United States, like Pegasus.

15.     Hiscox and Howden could not have sold the Fine Art Policy to Plaintiff without the involvement of Pegasus acting as a broker and working with Howden and Hiscox.

16.     On November 17, 2021, Mr. Halbower emailed Ms. VanRoy a copy of a June 8, 2021 fine art appraisal ("June 2021 Appraisal"), which lists the appraised values for ten works of art in Plaintiff's collection. As Mr. Halbower explained in the email communication to Ms. VanRoy, "[h]ere is a start"— meaning that it was the start of the list of artworks in Plaintiff's collection.

17.     The June 2021 Appraisal includes the *Cliff*, the *Path,* and the *Castle*.

18.     Later that same day, Mr. Halbower sent Pegasus another email that included a more comprehensive list of artwork in Plaintiff's collection. The list contains fourteen works of art, including the *Cliff*, the *Path* and the *Castle*, and also the painting referred to as the *Prairie* (the

3

"November 2021 Inventory").  The November 2021 Inventory also included a specified valuation for each artwork.

19.     The *River* was left off both the June 2021 Appraisal and the November 2021 Inventory.

20.     On November 24, 2021, Pegasus provided the insurance proposal from Hiscox for Plaintiff's fine art collection. The proposal included a $100 million policy limit.

21.     On January 30, 2022, Mr. Halbower emailed Pegasus: "I would like to go with Lloyd's [Hiscox] for the artwork. I want to make sure that you have an inventory of the higher price paintings." Mr. Halbower attached to his January 30, 2022 email a list of the "higher price paintings" in the Halbower collection, which again included the *Cliff*, the *Path*, the *Castle* and the *Prairie*, all previously identified in the November 2021 Inventory. Mr. Halbower's email stated, "I am happy with the $100,000 million [sic] coverage. I don't need to modify as the art is spread out in different homes."

22.     On February 10, 2022, Pegasus confirmed that the fine art coverage brokered by Howden and underwritten by Hiscox was bound effective February 9, 2022. Pegasus then emailed Mr. Halbower a copy of the Fine Art Policy which is attached at Exhibit A.

23.     Hiscox claims that Ms. Van Roy made certain changes to the Fine Art Policy that she sent to Plaintiff.  However, the copy attached as Exhibit A to this Complaint is the only version that Plaintiff ever received prior to the June Fire, and Plaintiff had no knowledge of any changes that Ms. Van Roy might have made.

24.     In addition, Hiscox has admitted that any changes that Ms. Van Roy are not material with respect to any coverage determination.

25. On April 5, 2022, Plaintiff received an updated appraisal (the "April 2022 Appraisal") that listed the three works previously appraised in the June 2021 Appraisal, the *Cliff*, the *Path*, and the *Castle*. All three artworks had appreciated in value.

26. The April 2022 Appraisal also included for the first time an appraisal of the *Prairie*. The *Prairie* had been acquired in September of 2021, several months after the June 2021 Appraisal, but it was listed in the November 2021 Inventory and the January 30, 2022 email sent by Mr. Halbower to Pegasus.

27. The April 2022 Appraisal did not include the *River*.

28. After receiving the April 2022 Appraisal, Mr. Halbower emailed Pegasus and stated that some of the artwork in Plaintiff's collection had been appraised at a higher value. Mr. Halbower wrote: "Just confirming that the [Fine Art Policy] is written so I can get fair market value if any 1 piece is stolen or damaged? I think I am comfortable with $100 million of coverage even though [the appraisers] think that the collection is worth more than that."

29. Pegasus responded: "Yes - it will be FMV at time of loss." FMV is Fair Market Value.

30. Mr. Halbower forwarded a copy of the April 2022 Appraisal to Pegasus on June 3, 2022.

## The Fine Art Policy

### A.    The Fine Art Policy Provides Insurance Coverage for Plaintiff's Fine Art Anywhere in the World.

31. Plaintiff's Fine Art Policy states: "**We** will insure **your collection** anywhere in the world, unless otherwise stated in the **risk details**, against physical loss or physical damage which happens during the **period of insurance**, subject to the exclusions, terms, and conditions shown below." **Ex. A, The Fine Art Policy** (emphasis in original).

5

32.     The Fine Art Policy does not contain risk details that excludes or limits the coverage of "**your collection** anywhere in the world."

33.     The Fine Art Policy defines "collection" as "the property shown in the risk details."

34.     There is no document or part of the policy labeled "risk details" within the Fine Art Policy.

35.     The Fine Art Policy does contain a document titled "The Schedule."

36.     However, "The Schedule" does not use the word "property" or define the word "property."

37.     "The Schedule" does contain the following language:

> **Interest:** Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker.

38.     Hiscox takes the position that the terms "The Schedule" and "risk details" have the same meaning in the Fine Art Policy.

39.     Hiscox also takes the position that the terms "property" and "interest" have the same meaning in the Fine Art Policy.

40.     Hiscox has acknowledged that it failed to include an "attached schedule" to the Fine Art Policy, and that the Fine Art Policy does not include an "attached schedule" and has never included an "attached schedule."

41.     No "attached schedule" was ever separately communicated to Plaintiff, Mr. Halbower or Pegasus.

42.     The Schedule does not indicate Plaintiff's Fine Art collection _must_ be listed "on file" by the Lloyd's Broker, as that term is used in the Policy.  Rather, The Schedule uses a permissive term, stating that the Lloyd's Broker _"may"_ have some or all of Plaintiff's Fine Art

collection "on file."  Thus, there is no requirement that any particular item of fine art be on file with the Lloyd's Broker.

43.     The Fine Art Policy also does not define what it means for fine arts to "be held on file."

44.     Moreover, the Fine Art Policy does not provide Plaintiff with any indication of what fine art might be held on file by the Lloyd's Broker at any given time.

45.     Indeed, Hiscox has admitted that the contents of the file held by the Lloyd's Broker could change over time without notice to Plaintiff.

46.     Hiscox also takes the position that if the contents of the file held by the Lloyd's Broker are irretrievably lost through no fault of Plaintiff, such as through a fire or a data breach, there would be no coverage under the Fine Art Policy for items that were no longer "held on file."

47.     No list or other indication of what "may be" held on file by the Lloyd's Broker was ever communicated to Plaintiff or Mr. Halbower.

48.     The Fine Art Policy is an unscheduled insurance policy, as it does not provide any schedule or list of individually covered items.

49.     The Fine Art Policy provides insurance coverage for Plaintiff's collection of "Fine Arts of whatsoever nature" located "anywhere in the world" whether listed or unlisted.

50.     The Fine Art Policy provides insurance coverage for Plaintiff's collection of "Fine Arts of whatsoever nature" located "anywhere in the world" whether listed or unlisted regardless of what is held on file by the Lloyd's Broker.

B.     **Pegasus is Both the "Insurance Agent" and the "Lloyd's Broker" Under the Fine Art Policy.**

51.     Pegasus is an insurance broker.  Pegasus is also identified and defined as the "Insurance Agent" in the Fine Art Policy.

52.     The Fine Art Policy uses, but does not define, the term "Lloyd's Broker."

53.     Hiscox concedes that the terms "Insurance Agent" and "Lloyd's Broker" in the Fine Art Policy can have the same meaning and can refer to the same entity.

54.     The Fine Art Policy requires that Plaintiff pay the premium due under the Fine Art Policy to the Lloyd's Broker.

55.     The Fine Art Policy States, "You undertake that the premium shown in 'the Schedule' will be paid in full to the Lloyd's Broker by the date shown above."

56.     Plaintiff paid the premium due under the Fine Art Policy to Pegasus in its capacity as the Lloyd's Broker.

57.     The Halbowers understood that Pegasus was an insurance broker.  The Halbowers were not provided with any information regarding Howden's role in connection with the Fine Art Policy, and the Halbowers had no idea that Howden was an insurance broker.

58.     There is no language in the Fine Art Policy that would inform Plaintiff that Hiscox intended for the term "Lloyd's Broker" to refer to Howden or, alternatively, only to Howden and not to Pegasus.

59.     There is no language in the Fine Art Policy that indicates that Howden is the Lloyd's Broker.  The Fine Art Policy does not identify Howden or explain what role, if any, Howden has in connection with the Fine Art Policy.

60.     Pegasus is the Lloyd's Broker, as that term is used in the Fine Art Policy.

**C.     The *Prairie* is Either a Listed Item, Held on File by Pegasus at the Time of the Loss, or it is an Unlisted Item; the *River* is an Unlisted Item.**

61.     The Fine Art Policy states: "If an item is lost or destroyed **we** will pay the amount insured of that item as shown in the basis of the valuation above."

62.     The "[b]asis of valuation," in turn, is divided into two categories—"Listed items" and "Unlisted items." (Hereinafter, referred to as "Basis of Valuation," "Listed Items" and "Unlisted Items.")

63.     The Fine Art Policy states that the Basis of Valuation for Listed Items is: "**Listed items** - For items which are listed individually in the specification held by **us** or **your** insurance agent, the value is the amount insured shown for each item."

64.     Thus, the Fine Art Policy defines "Listed Items" as items listed in a specification held by "us," defined as Hiscox under the Policy, or by Plaintiff's "insurance agent," defined as Pegasus under the Policy.

65.     There is no definition of "specification" contained in the Fine Art Policy.

66.     Hiscox concedes that the terms "specification," "schedule," (as used in the term "attached schedule"), and "file" (as may be held by the Lloyd's Broker) all have the same meaning in the Fine Art Policy and refer to the same document.

67.     As described above, on November 17, 2021, Plaintiff provided Pegasus with the November 2021 Inventory that listed the *Prairie.*  Pegasus maintained the list of Plaintiff's artworks, including the *Prairie,* on file from that date forward.

68.     As a result, the *Prairie* was listed individually in the specification held by *Pegasus*, the defined insurance agent under the Fine Art Policy, before the date of the June Fire.

69.     Therefore, under the plain language of the Fine Art Policy, and as the Fine Art Policy has been interpreted by Hiscox, the *Prairie* was also held on file by the *Lloyd's Broker* before the date of the June fire.

70.     The Fine Art Policy does not provide an "amount insured" for any of the Listed Items in the "collections."  Instead, the Fine Art Policy simply provides a total sum insured.

71.     The Fine Art Policy states that the Basis of Valuation for Unlisted Items is: "**Unlisted items** - For items which are not individually listed in the specification held by **us** or **your** insurance agent, the value is the market value of the items on the date of loss."

72.     Accordingly, the Fine Art Policy covers both listed and unlisted fine arts of whatsoever nature.

73.     As of the date of the loss, the *River* was an Unlisted Item.

74.     Hiscox concedes that the *River* was an Unlisted Item as that term is defined in the Fine Art Policy.

75.     The "[t]otal amount payable" under the Fine Art Policy is "[t]he most we will pay in total for each incident of loss is the **total amount insured** plus any additional expenses as described above."

76.     The "total amount insured" is defined as "[t]he most we will pay for each incident of loss as shown in the **risk details**."  Because Hiscox agreed in the Fine Art Policy to pay the "total amount insured" for "each" incident of loss, the coverage under the Fine Art Policy does not erode in the event of a loss.

77.     The Schedule provides that the "Sum Insured" is "USD 93,561,915 increasing up to USD 115,000,000 as per the New Possession clause detailed in the policy wording."

78.     The loss incurred as a result of the June Fire is less than the Sum Insured under the Fine Art Policy.

**D.     A Fire at the Oceana County Home Destroyed Four Listed Works of Art Insured Under the Fine Art Policy**

79.     The June Fire destroyed the Oceana County Home and all of its contents.

80.     Five works of art insured under the Fine Art Policy were destroyed in the June Fire. Four of the five works of art - the *Cliff*, the *Path*, the *Castle* and the *Prairie* - were itemized in the November 2021 Inventory held on file by Pegasus, the Lloyd's Broker.

81.     On June 3, 2022, Mr. Halbower informed Pegasus of the loss as required under the Fine Art Policy.

82.     On June 3, 2022, Pegasus notified Howden of the loss, and Hiscox has agreed that a claim for the *Cliff*, the *Path*, the *Castle*, and the *Prairie* was fully filed as of June 3, 2022.

83.     On June 4, 2022, Pegasus sent Howden the November 2021 Inventory of Plaintiff's fine art.  The November 2021 Inventory specifically listed by name the *Cliff*, the *Path*, the *Castle*, and the *Prairie.* Pegasus, as the Lloyd's Broker and insurance agent under the Fine Art Policy, had held the November 2021 Inventory in its "file" as the "schedule" and the "specification" since November 17, 2021.

84.     Later that same day, Pegasus provided Howden with a list containing the insured value of each item listed as established by the April 2022 Appraisal, including the values of the *Cliff*, the *Path*, the *Castle*, and the *Prairie*.

85.     Because Pegasus was Plaintiff's insurance agent, as defined in the Fine Art Policy, because the list that Pegasus provided to Howden on June 4, 2022 contained the "value" of each item destroyed by the fire, and because those values were kept by Pegasus as part of the specification, the list that Pegasus provided to Howden on June 4, 2022 provides the Basis of Valuation for Listed items, as defined in the Fine Art Policy.

86.     Despite numerous communications from Pegasus and Mr. Halbower attempting to confirm coverage under the Fine Art Policy, neither Howden nor Hiscox responded for six weeks.

E.    **Hiscox's July 18, 2022 Coverage Letter & Incomplete Coverage**

87.    On July 18, 2022, Hiscox sent a coverage letter to Plaintiff acknowledging coverage under the Fine Art Policy for three of the five works destroyed in the June Fire. Hiscox's letter, however, reserved its rights for covering the *Prairie*, pending its investigation.

88.    Hiscox stated that the *Cliff*, the *Path* and the *Castle* were covered under the Fine Art policy "at the values set forth in that [June 2021] appraisal."

89.    On or about August 4, 2022, Hiscox partially paid out the claim to Plaintiff in the amounts listed for the *Cliff*, the *Path* and the *Castle* on the June 2021 Appraisal.

90.    There is nothing contained in the Fine Art Policy that limits the valuation of Plaintiff's collection to the amounts shown on the June 2021 Appraisal.

91.    In fact, the only reference in the Fine Art Policy to the June 2021 Appraisal appears in The Schedule in reference to the total sum insured.

92.    Instead, the Fine Art Policy states that the Basis of Valuation for Listed Items is the "value" held by the "insurance agent" "for each item," which in this case is the value contained in the April 2022 Appraisal.

93.    Additionally, Hiscox, refused to cover the *Prairie*, even though it was contained in the November 2021 Inventory, on the basis that it was "not held on file" by Howden.  Hiscox did acknowledge in its letter that the reference to "insurance agent," contained in the definition of Listed Items in the valuation provision of the Fine Art Policy, refers to Pegasus.

94.    In its refusal to cover the *Prairie*, Hiscox stated that it was "still investigating whether there is coverage," and therefore Hiscox "reserve[d] all rights with regards to coverage for that artwork."

95.     Hiscox has refused to pay the full value of the *Cliff*, the *Path* and the *Castle* established by the April 2022 Appraisal.

96.     Hiscox has refused to provide coverage for the *Prairie*, despite it being included in the November 2021 Inventory and its value listed in the April 2022 Appraisal.

97.     Hiscox has also refused to cover the *River*, an Unlisted Item, destroyed in the June Fire.

98.     The *River* was valued in an August 2022 appraisal.

99.     Hiscox has breached its obligations under the Fine Art Policy by refusing to pay for the full insured value of the *Cliff*, the *Path*, and the *Castle* and by refusing to pay anything for the *Prairie* and the *River* destroyed in the June Fire.

## COUNT I: BREACH OF CONTRACT

100.    Plaintiff incorporates by reference the preceding paragraphs.

101.    Plaintiff is an insured under the Fine Art Policy. The Fine Art Policy covers a period of insurance from February 9, 2022 to February 9, 2023.

102.    Five works of art covered under the Fine Art Policy, four Listed Items and one Unlisted Item, were destroyed in the June Fire, during the period of insurance.

103.    The Fine Art Policy covered all four listed artworks - the *Cliff*; the *Path*, the *Castle*, and the *Prairie* - at the values established for each in the April 2022 Appraisal, which was provided to Howden and Hiscox.

104.    The Fine Art Policy further covers the *River*, an Unlisted Item, at its market value on June 2, 2022.

105.    Hiscox has breached the Fine Art Policy by refusing to provide coverage for the four Listed Items at the values set forth in the April 2022 Appraisal.

13

106.    Alternatively, to the extent any one of the Listed Items identified herein are determined to be Unlisted Items, Hiscox has breached the Fine Art Policy by refusing to provide coverage for any such Unlisted Item at its market value as of June 2, 2022.

107.    Hiscox has breached the Fine Art Policy by refusing to provide coverage for the Unlisted Item, the *River*, at its market value as of June 2, 2022.

108.    Plaintiff is entitled to damages as a result of Hiscox's breach of the Fine Art Policy.

109.    Pursuant to MCL 500.2006(4), Plaintiff is further entitled to simple interest at the rate of 12% per annum on the unpaid amount of Plaintiffs claim beginning August 3, 2022.

## COUNT II: DECLARATORY JUDGMENT

110.    Plaintiff incorporates by reference the preceding paragraphs.

111.    The facts and circumstances set forth above in this Complaint present an actual controversy regarding the rights and legal relations of the parties.

112.    The *Cliff*, the *Path*, the *Castle*, and the *Prairie*, which were destroyed in the June Fire, are Listed Items as part of Plaintiff's "collection anywhere in the world" and are insured under the Fine Art Policy, as set out above.

113.    The Fine Art Policy states: "If an item is lost or destroyed **we** will pay the amount insured of that item as shown in the basis of the valuation above."

114.    The "Basis of Valuation, in turn, is divided into two categories—Listed Items and Unlisted Items.

115.    The Fine Art Policy states that the Basis of Valuation for Listed Items is: "**Listed items** - For items which are listed individually in the specification held by **us** or **your** insurance agent, the value is the amount insured shown for each item."

14

116.    Thus, the Fine Art Policy defines Listed Items as items listed in a specification held by "us," defined as Hiscox under the Policy, or by Plaintiff's "insurance agent," defined as Pegasus under the Policy.

117.    Because Pegasus was Plaintiff's insurance agent, as defined in the Fine Art Policy, because the list that Pegasus provided to Howden on June 4, 2022 contained the "value" of each item destroyed by the fire, and because those values were kept by Pegasus as part of the specification, the list that Pegasus provided to Howden on June 4, 2022 provides the Basis of Valuation for Listed Items, as defined in the Fine Art Policy.

118.    The April 2022 Appraisal has been provided to Howden and Hiscox.

119.    Hiscox is required to provide coverage for the four Listed Items at the values established in the April 2022 Appraisal.

120.    Alternatively, if any of the four Listed Items are deemed to be Unlisted Items, they must be valued at their market value at the time of loss.

121.    The market value, as of June 2, 2022, for the four artworks contained in the November 2021 Inventory is properly determined by the April 2022 Appraisal.

122.    Either as Listed Items or as Unlisted Items, the *Cliff*, the *Path*, the *Castle*, and the *Prairie*, all of which were included on the November 2021 Inventory and were destroyed in the June Fire, are covered under the Fine Art Policy.

123.    The *River*, which was also destroyed in the June Fire, is covered as an Unlisted item under the Fine Art Policy and must be valued at its market value on the date of loss.

124.    The August 2022 Appraisal sets forth the market value for the *River* on the date of loss.

125.    In breach of the Fine Art Policy, Hiscox has only partially covered the loss of the *Cliff*, the *Path* and the *Castle*, in contradiction of the valuation provisions contained in the Fine Art Policy.

126.    In breach of the Fine Art Policy, Hiscox has refused to provide coverage for the *Prairie* and the *River*.

127.    Hiscox is obligated to cover the *Cliff*, the *Path*, the *Castle*, and the *Prairie* at the values set forth in the April 2022 Appraisal and the Unlisted Item(s) at the value established in the August 2022 Appraisal, but Hiscox has refused to provide such coverage.

128.    Based on the foregoing, there is an actual controversy between the parties, and pursuant to MCR 2.605(A), this Court may declare the legal rights and obligations of the parties.

**COUNT III (Pled in the Alternative): CLAIM FOR ATTORNEY FEES AND DAMAGES UNDER THE ILLINOIS INSURANCE CODE**

129.    Plaintiff incorporates by reference the preceding paragraphs.

130.    Plaintiff maintains that Michigan law governs the parties' dispute in this matter.

131.    Hiscox has argued that Illinois law should apply to the parties' dispute.

132.    As an alternative argument, in the event that the Court should determine that Illinois law applies to the parties' dispute in this matter, Plaintiff seeks the recovery of reasonable attorney fees and statutory damages under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.1.

133.    Section 155 applies to an action by or against an insurance company in which the liability of an insurance company on a policy is at issue.  In such an action, if the conduct of the insurance company in denying coverage and/or in delaying settling a claim is found to be vexatious and unreasonable, Section 155 provides for an award of reasonable attorney fees along with other defined statutory damages.

134.    Given the terms and conditions of the Fine Art Policy as described above, Hiscox's delay in settling Plaintiff's claim and its failure to recognize liability and pay Plaintiff's claim in full is vexatious and unreasonable.

135.    Accordingly, if the Court determines that Illinois law applies in this matter, Plaintiff is entitled to reasonable attorney fees and the maximum available statutory damages under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.1, in addition to the other relief requested herein.

<br>

Respectfully submitted,
VARNUM LLP
Attorneys for Julie Schulz Halbower, as Trustee of
the Halbower Legacy Trust

Dated:  June 20, 2024          By:  /s/  Brion B. Doyle
          Ronald G. DeWaard (P44117)
          Brion B. Doyle (P67870)
Business Address, Telephone, and Email
          Bridgewater Place
          P.O. Box 352
          Grand Rapids, MI 49501-0352
          (616) 336-6000
          rgdewaard@varnumlaw.com
          bbdoyle@varnumlaw.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

VARNUM LLP
Attorneys for Julie Schulz Halbower, as Trustee of
the Halbower Legacy Trust

Dated:  June 20, 2024                By:    */s/ Brion B. Doyle*
                                            Ronald G. DeWaard (P44117)
                                            Brion B. Doyle (P67870)
Business Address, Telephone, and Email
                                            Bridgewater Place
                                            P.O. Box 352
                                            Grand Rapids, MI 49501-0352
                                            (616) 336-6000
                                            rgdewaard@varnumlaw.com
                                            bbdoyle@varnumlaw.com

22886786.1