UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE SCHULZ HALBOWER, as Trustee
of the HALBOWER LEGACY TRUST,

          Plaintiff/Counter-Defendant,

v.

HISCOX SYNDICATE 33 OF LLOYD'S
OF LONDON,

          Defendant/Counter-Plaintiff.

Case No. 1:22-cv-964

Hon. Robert J. Jonker

**ORAL ARGUMENT REQUESTED**

| | |
|---|---|
| Ronald G. DeWaard (P44117) | Alexander Ross (IL 6283882) |
| Brion B. Doyle (P67870) | Clinton E. Cameron (P45567) |
| VARNUM LLP | Courtney D. Logli (IL 6321409) |
| Attorneys for Plaintiff/Counter-Defendant | CLYDE & CO US LLP |
| Bridgewater Place, P.O. Box 352 | Attorneys for Defendant/Counter-Plaintiff |
| Grand Rapids, MI 49501-0352 | 30 South Wacker Drive, Suite 2600 |
| (616) 336-6000 | Chicago, IL 60606 |
| rgdewaard@varnumlaw.com | (312) 635-7000 |
| bbdoyle@varnumlaw.com | alexander.ross@cydeco.us |
| | clinton.cameron@clydeco.us |
| | courtney.logli@clydeco.us |

**<u>DEFENDANT/COUNTER-PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(6)</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................1

ALLEGATIONS OF THE AMENDED COMPLAINT ...........................................1

    I.  Policy ..............................................................................................................2

    II.  The Loss ..........................................................................................................3

LEGAL STANDARD ................................................................................................4

    I.  The Rule 12(b)(6) Standard. ..........................................................................4

    II.  Interpretation of Insurance Policies ..............................................................5

ARGUMENT .............................................................................................................6

    I.  There Is No Coverage for Either the *Prairie* or the *River* ...............................7

        A.  The Halbowers' "Collection" Insured Under the Policy. .............................7

        B.  The Policy Itself Shows That Howden Is the Lloyd's Broker. .....................9

        C.  Information About Which the Court May Take Judicial Notice, as Well as Prior Precedent, Also Shows that Howden, and Not Pegasus or Ms. Van Roy, Was the Lloyd's Broker ..............................................................................12

        D.  The Amended Complaint Fails to Plead What Artworks from the Halbowers' Collection Were Included on a List Held by Howden. .................................14

    II.  The Amended Complaint Fails to Plead a Claim that the Plaintiff Is Due Additional Sums for the Listed Art Works that Hiscox Has Already Paid........................15

    III. Plaintiff's Claim Under Section 155 Is Deficient as a Matter of Law ...........16

    IV. This Is the Unusual Case Where Rule 12(b)(6) Dismissal with Prejudice Is Appropriate and Necessary ......................................................................................................17

CONCLUSION...........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................4, 5, 9

*Ashland Hosp. Corp. v. Service Employees Intern. Union, Dist.119 WV/KY/OH*,
   708 F.3d 737 (6th Cir. 2013) ..................................................................................4

*Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*,
   569 F. App'x 438 (6th Cir. 2014) ...........................................................................5

*Auto–Owners Ins. Co. v. Churchman*,
   489 N.W.2d 431 (Mich. 1992)................................................................................6

*Bao v. MemberSelect Ins. Co.*,
   2022 WL 1211509 (N.D. Ill. Apr. 25, 2022) ........................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................4, 5, 9

*Center for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011) ..................................................................................4

*Certain Interested Underwriters at Lloyd's, London, England v. Layne*,
   26 F.3d 39 (6th Cir. 1994) ....................................................................................13

*Edinburg Assur. Co. v. R.L. Burns Corp.*,
   479 F. Supp. 138 (C.D. Cal. 1979), *aff'd except as to prejudgment interest*,
   669 F.2d 1259 (9th Cir. 1982) ..............................................................................13

*Eggerson v. U.S.*,
   2006 WL 1720252 (W.D. Mich. June 22, 2006) ..................................................12

*Henderson v. State Farm Fire and Cas. Co.*,
   596 N.W.2d 190 (Mich. 1999)................................................................................5

*Johnson v. Doodson Ins. Brokerage of Tex., LLC*,
   1 F. Supp. 3d 776 (E.D. Mich. 2014)......................................................................5

*Kroutil v. State Farm Mut. Auto. Ins. Co.*,
   195 N.E.3d 376 (Ill. App. Ct. 2021) .....................................................................16

*Leonard S. v. Health Care Serv. Corp.*,
   2023 WL 7182988 (N.D. Ill. Nov. 1, 2023) ........................................................17

*Louisiana School Employees' Retirement System v. Ernst & Young, LLP*,
   622 F.3d 471 (6th Cir. 2010) ........................................................................5

*Oppenheimer Bros. Inc. v. Joyce & Co.*,
   154 N.E.2d 856 (Ill. App. Ct. 1958) .........................................................13

*Prestige Cas. Co. v. Mich. Mut. Ins. Co.*,
   99 F.3d 1340 (6th Cir. 1996) ......................................................................6

*Rory v. Continental Ins. Co.*,
   703 N.W.2d 23 (Mich. 2005) ......................................................................5

*Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*,
   706 N.W.2d 426 (Mich. Ct. App. 2005) .....................................................5

*Souza v. Erie Ins. Co.*,
   2023 WL 4762712 (N.D. Ill. July 25, 2023).............................................17

*Stine v. Continental Casualty Co.*,
   349 N.W.2d 127 (Mich. 1984) ...................................................................6

*Stryker Corp. v. XL Ins. Am.*,
   735 F.3d 349 (6th Cir. 2012) ..................................................................5, 6

*Talavera Hair Products, Inc. v. Taizhou Yunsung Electrical Appliance Co., Ltd.*,
   2021 WL 824768 .......................................................................................12

*Travelers Indem. Co. v. Booker*,
   657 F. Supp. 280 (D.D.C. 1987) ..............................................................13

*Upjohn Co. v. New Hampshire Ins. Co.*,
   476 N.W.2d 392 (Mich. 1991) ...................................................................5

*Vushaj v. Farm Bureau General Ins. Co. of Michigan*,
   773 N.W.2d 758 (Mich. Ct. App. 2009) .....................................................9

*Wilkie v. Auto–Owners Ins. Co.*,
   664 N.W.2d 776 (Mich. 2003)..................................................................5, 6

**Statutes**

Illinois Insurance Code Section 155 ....................................................6, 16, 17, 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)............................................................................... *passim*

Defendant/Counter-Plaintiff Hiscox Syndicate 33 of Lloyd's of London ("Hiscox"), acting through its agent Hiscox Syndicate Limited, respectfully submits this memorandum in support of its motion to dismiss Plaintiff/Counter-Defendant Julie Schulz Halbower, as Trustee of the Halbower Legacy Trust's ("Plaintiff" or "Ms. Halbower") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

After a year and half of discovery, Plaintiff has been forced to file her First Amended Complaint (the "Amended Complaint"), offering an entirely new theory of coverage, because discovery has revealed that the email on which she based her prior theory, allegedly sent by her insurance agent, Tonja Van Roy ("Ms. Van Roy") of Pegasus Insurance Services ("Pegasus"), to the Lloyd's Broker, Howden Insurance Brokers Limited ("Howden"), was never sent.  With her original coverage theory in tatters, Plaintiff's Amended Complaint seeks to completely reframe not only the facts of the case, but also the role of the various players and the meaning of the plain language of the insurance policy ("Policy").

Despite Plaintiff's creative allegations and theories, this motion is, as Rule 12(b)(6) motions must be, very simple.  That is okay, because no matter how creative the allegations, or how creative the new theories, this case is now one of simple insurance policy interpretation. Plaintiff's Amended Complaint only exposes the realities of this case: the Policy does not provide coverage for the *Prairie* (or the *River*), and Plaintiff is owed nothing further in relation to the *Cliff*, the *Path*, and the *Castle*.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Below are the relevant allegations contained in the Amended Complaint.  Hiscox does not agree with many of these allegations, but sets them forth here, as alleged by Ms. Halbower, or based on the plain meaning of the contract of insurance she attaches as "Exhibit A," pursuant to

- 1 -

the applicable standard under Rule 12(b)(6).  Hiscox reserves its right to respond to those facts in an appropriate time and manner in the event that this case proceeds.

## I.     Policy

Hiscox issued the Policy to Ms. Halbower – both in her personal capacity as well as the trustee of the Halbower Legacy Trust – and to her husband Matt Halbower ("Mr. Halbower") on February 9, 2022.  Under the terms of the Policy, the "Interest" that is protected by the insurance is described as follows:

> **Interest:**     Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker

(ECF No. 103-1, PageID.949-52).  Plaintiff alleges that there is no attached schedule.  (ECF No. 103, PageID.935, ¶¶ 40-41).

The Halbowers allegedly worked with Ms. Van Roy at Pegasus to obtain insurance proposals for Plaintiff's art collection on behalf of Plaintiff.  (ECF No. 103, PageID.932, ¶ 12).  In connection with that effort to secure insurance, on November 17, 2021, Mr. Halbower allegedly emailed Ms. Van Roy a copy of a June 8, 2021 appraisal ("June 2021 Appraisal"), listing the appraised values of ten works of art in Plaintiff's collection.  (ECF No. 103, PageID.932, ¶ 16).  The June 2021 Appraisal included the *Cliff*, the *Path*, and the *Castle*, but neither the *Prairie* nor the *River* were included.  (ECF No. 103, PageID.932-33, ¶¶ 17-19).  Mr. Halbower allegedly sent Pegasus another email ("November 2021 Inventory") that included a list of fourteen works of art, including the *Cliff*, the *Path*, the *Castle*, and the *Prairie*, but not the *River*.  (ECF No. 103, PageID.932-33, ¶¶ 18-19).  The Amended Complaint does not allege what Ms. Van Roy did with either the June 2021 Appraisal or the November 2021 Inventory after Mr. Halbower sent them to her, but before the Policy was bound.  Hiscox bound the Policy on February 9, 2022, and Pegasus sent the form of the Policy attached as Exhibit A to the Amended Complaint to Mr. Halbower.

## II.      The Loss

Plaintiff alleges that a fire destroyed the Halbowers' home in Oceana County, Michigan on June 2, 2022 through June 3, 2022 ("June Fire").  (ECF No. 103, PageID.930, ¶ 1).  Mr. Halbower notified Pegasus of the loss on June 3, 2022, and Pegasus notified Howden of the loss on the same date.  (ECF No. 103, PageID.940, ¶¶ 81-82).  Also on June 3, 2022, Mr. Halbower sent Pegasus the April 2022 Appraisal. (ECF No. 103, PageID.934, 940, ¶¶ 30, 81-82, 84).

The next day, June 4, 2022, Pegasus sent Howden the November 2021 Inventory and the April 2022 Appraisal for the first time.  (ECF No. 103, PageID.934, 940, ¶¶ 30, 81-82, 84). Plaintiff did not secure an appraisal of the *River* until August 2022.  (ECF No. 103, PageID.942, ¶ 98).  The Amended Complaint does not allege if or when the appraisal of the *River* was sent to Pegasus or Howden.

On July 18, 2022, Hiscox sent a coverage position letter to the Halbowers.  (ECF No. 103, PageID.941, ¶ 87).  That coverage position letter acknowledged coverage for the *Cliff*, the *Path*, and the *Castle,* but reserved its rights to deny coverage for the *Prairie* and the *River.*  (ECF No. 103, PageID.941-42, ¶¶ 88-98).  Hiscox paid the Halbowers the scheduled amounts in the June 2021 Appraisal for the *Cliff*, the *Path*, and the *Castle* on August 4, 2022.  (ECF No. 103, PageID.942, ¶ 89).

Ms. Halbower commenced this action in the Circuit Court for Oceana County, Michigan on August 17, 2022.  She filed the Amended Complaint in this Court on June 20, 2024, after obtaining leave by an order of June 13, 2024.  (ECF No. 102).

## LEGAL STANDARD

## I.      The Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint. *Ashland Hosp. Corp. v. Service Employees Intern. Union, Dist.119 WV/KY/OH*, 708 F.3d 737, 740 (6th Cir. 2013).  A plaintiff cannot simply parrot the elements of a claim to survive a Rule 12(b)(6) motion.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, *Twombly* and *Iqbal* created a two-part "plausibility" standard.  *See, e.g.*, *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678–80.  First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it; "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Second, the complaint must state a claim "plausible on its face," meaning the plaintiff's right to relief must rise above a "speculative level." *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Importantly, while a court is to accept the well-pleaded facts in the complaint as true, legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.  *Id.* at 678, 681; *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011).  In this case, Plaintiff's conclusory allegation that Pegasus is the Lloyd's Broker is not entitled to any presumption of accuracy.

After excising the allegations not entitled to the presumption of truth, the Court determines whether the remaining allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.  That is, the complaint must contain "allegations plausibly suggesting (not merely consistent with)" entitlement to relief. *Id.* at 557.  If the allegations give rise to an "obvious alternative explanation," then they may "stop[] short of the line between

- 4 -

possibility and plausibility of 'entitle[ment] to relief.'" *Iqbal*, 556 U.S. at 681; *Twombly*, 550 U.S. at 567.  Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Further, a complaint should be dismissed with prejudice where the Plaintiff could prove no set of facts in support of its allegations that would entitle it to relief, making any attempt to amend the complaint futile.  *Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014).  A district court acts within its discretion by dismissing a complaint with prejudice when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint.  *Louisiana School Employees' Retirement System v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010).

## II.     Interpretation of Insurance Policies

Under Michigan law, an insurance contract is to be interpreted like any other contract.  *Stryker Corp. v. XL Ins. Am.,* 735 F.3d 349, 354 (6th Cir. 2012); *Rory v. Continental Ins. Co.,* 703 N.W.2d 23, 26 (Mich. 2005).[1]  The meaning of a contract is a question of law, as is the question of whether contract language is ambiguous.  *Wilkie v. Auto–Owners Ins. Co.,* 664 N.W.2d 776, 780 (Mich. 2003).  First, an insurance contract must be enforced in accordance with its terms.  *Upjohn Co. v. New Hampshire Ins. Co.,* 476 N.W.2d 392, 397 (Mich. 1991).  Courts should enforce contract language in accordance with its plain and commonly used meaning, being careful to enforce specific and well-recognized terms.  *Henderson v. State Farm Fire and Cas. Co.,* 596

---

[1] The Policy was issued in Illinois to an insured with an Illinois address, but the alleged loss was in Michigan. (ECF No. 103-1, PageID.949).  The language of the Policy is unambiguous, so there is no conflict between Illinois and Michigan law on its interpretation.  *See Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426, 432 n.5 (Mich. Ct. App. 2005) ("Illinois rules of insurance policy interpretation are substantially similar to those of Michigan.").  Therefore, for purposes of Hiscox's motion, the Court need not engage in a choice of law analysis.  *See Johnson v. Doodson Ins. Brokerage of Tex., LLC*, 1 F. Supp. 3d 776, 782 (E.D. Mich. 2014).  As such, Hiscox cites to relevant Michigan law throughout this motion.

N.W.2d 190, 193–94 (Mich. 1999); *Stryker,* 735 F.3d at 354.  A contract should be read as a whole instrument and with the goal of enforcing the intent of the parties.  *Prestige Cas. Co. v. Mich. Mut. Ins. Co.,* 99 F.3d 1340, 1350 (6th Cir. 1996); *see also Wilkie,* 664 N.W.2d at 781–82 (holding that a term ambiguous on its own became unambiguous in context).

A court must not hold an insurance company liable for a risk that it did not assume.  *Auto–Owners Ins. Co. v. Churchman,* 489 N.W.2d 431, 434 (Mich. 1992).  As such, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise.  *Id.*  Instead, the terms of a contract must be enforced as written where there is no ambiguity. *Stine v. Continental Casualty Co.,* 349 N.W.2d 127, 138 (Mich. 1984).

## **ARGUMENT**

The Amended Complaint alleges that, among others, two paintings were in the Halbowers' house at the time of the fire: the *Prairie* and the *River*.  It further alleges that Hiscox has breached its contract with Plaintiff because Hiscox denied that those paintings were covered under the Policy.  Ms. Halbower also alleges that Hiscox did not pay her enough for other paintings that burned in the fire because she was entitled to an amount listed on an appraisal not provided to Pegasus or Howden until after the loss or, alternatively, the market value for those works, rather than the amount that was listed on an appraisal in effect prior to the fire.  Finally, the Amended Complaint alleges that Ms. Halbower is entitled to "delay damages" under Section 155 of the Illinois Insurance Code.  Hiscox moves for dismissal under Rule 12(b)(6) because the facts, as pled in the Amended Complaint, do not constitute claims for which relief may be granted under the Policy attached to that pleading.

## I.        **There Is No Coverage for Either the *Prairie* or the *River*.**

The facts pled do not support a conclusion that the *Prairie* and the *River* were covered under the Hiscox policy.  For an artwork to be covered under the Policy, it must either: (1) be

included in a schedule appended to the Policy; or (2) be on a list "held on file by the Lloyd's Broker" in connection with the Policy. The Amended Complaint does not claim there is a schedule attached to the Policy. Thus, the *Prairie* and the *River* are only covered if set forth on a list "held on file by the Lloyd's Broker." The face of the Policy demonstrates that the Lloyd's Broker is Howden. There is no allegation that Howden received a list of covered artworks from Ms. Halbower that included the *Prairie* and the *River* before the fire. Therefore, the facts pled do not support the claim that the *Prairie* and the *River* were covered under the Policy.

**A. The Halbowers' "Collection" Insured Under the Policy.**

The Policy provides the insuring agreement within the section entitled "**What is covered**", which provides as follows:

> **We** will insure **your collection** anywhere in the world, unless otherwise stated in the **risk details**, against physical loss or damage which happens during the **period of insurance**, subject to the exclusions, terms and conditions shown below.

(ECF No. 103-1, PageID.957). The terms in bold are defined terms under the Policy, so the definition of each term must be considered when interpreting the plain meaning of the insuring agreement. (ECF No. 103-1, PageID.956). "**Your**" is defined as "[t]he insured shown in the risk details." (ECF No. 103-1, PageID.956). So, the Policy insurers the Halbowers' "**collection**."

The term "**collection**" is defined in the Policy to be, "[t]he property shown in the **risk details**." (ECF No. 103-1, PageID.956). The term "**risk details**" is also defined in the Policy. It means, "[t]he document showing **your** name, **your** address and **your** insurance details that **we** sent **you** when **we** accepted this insurance or following any subsequent amendment to **your** cover, whichever is more recent." That is, it is the portion of the Policy where the name and address of the insured is along with a description of the insurance details sent to the Halbowers. All of that information is located in the part of the Policy called the "Schedule."

Below is the relevant part of the "Schedule" in the version of the Policy attached to the Amended Complaint:

**The Schedule**

| | |
|---|---|
| **Type:** | Private Fine Art Insurance |
| **Insurance Agent:** | Pegasus Insurance Services LLC<br>9360 W Flamingo Road, Suite 100 - #266<br>Las Vegas, NV 89147<br>United States of America |
| **Insured:** | Matthew and Julie Halbower **and/or** Halbower Legacy Trust |
| **Address:** | 40 Devonshire Lane, Kenilworth, IL 60043, United States of America |
| **Period:** | 9th February 2022 at Local Standard Time<br>to<br>9th February 2023 at Local Standard Time, both days inclusive<br><br>Local Standard Time will be the time at which a loss occurs and within the "territorial scope" of this **Insurance** |
| **Interest:** | Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker |
| **Sum Insured:** | USD 93,561,915 increasing up to USD 115,000,000 as per the New Possessions clause detailed within the policy wording |

(ECF No. 103-1, PageID.948). The collection being covered is set forth in the "Interest" section to mean, "Fine Arts of whatsoever nature as defined in the attached schedule or as may be held on file by the Lloyd's Broker."

Fortunately, applying that definition of the "**collection**" is simple enough. Plaintiff pleads that there is no attached schedule, (ECF No. 103, PageID.935, ¶¶ 40-41), and there is no "attached schedule" to the version of the Policy attached to the Amended Complaint, so the "**collection**" is not described there. That leaves only one option: that the "**collection**" is defined to mean "fine arts of whatsoever nature . . . as may be held on file by the Lloyd's Broker." That is happily simple enough too.

B.    **The Policy Itself Shows That Howden Is the Lloyd's Broker.**

Ms. Halbower's initial complaint unsurprisingly alleged that Howden, as the London-based broker operating at Lloyd's of London, was the "broker." That was the case for nearly two years. That is, those were the "facts" according to the Plaintiff. That was the case until she discovered that her agent, Ms. Van Roy, had signed a perjurious affidavit and repeatedly lied that she had sent the November 2021 Inventory to Howden before the Policy was bound. After Hiscox worked tirelessly to obtain that information, with much obstruction by Plaintiff, *presto chango*, the "facts" completely transformed in the Amended Complaint. No longer was Howden the Lloyd's Broker who received the November 2021 Inventory from Ms. Van Roy and had it "on file." Those facts would no longer do, since they would mean the Plaintiff would lose. Now, instead, Ms. Van Roy has conveniently transformed, like the child's toy, from the Halbowers' insurance agent to the "Lloyd's Broker."

This Court need not be led astray by that false sleight of hand. It is true that the Court is obliged to take the facts as pled in a complaint as true no matter how fantastical they may be. That is *not,* however, true where the Plaintiff simply parrots the sort of legal conclusions that she thinks mean she wins. This is one of the main points of *Twombly* and *Iqbal* and their progeny in this Circuit. The Plaintiff may not avoid a motion to dismiss by simply asserting that Ms. Van Roy is the "Lloyd's Broker" as that term is used in the Policy. Instead, this Court should look to the language of the Policy itself and to matters on which the Court can take judicial notice. Both of those point to only one conclusion: Howden, and not Ms. Van Roy, is the "Lloyd's Broker."

Looking first to the Policy for guidance, it is true "Lloyd's Broker" is not a defined term in the Policy. That is not the end of the inquiry, as "the mere fact that a term is not defined in a policy does not render that term ambiguous." *Vushaj v. Farm Bureau General Ins. Co. of Michigan*, 773 N.W.2d 758, 759 (Mich. Ct. App. 2009), citing *Henderson v. State Farm Fire and*

*Cas. Co.*, 596 N.W.2d 190 (Mich. 1999).  There is no need to define the term here, because its meaning is so self-evident to anyone familiar with the Policy and the Lloyd's market that no one would think to define it any more than they would think to say the sky is blue.

The first sign that Howden is the Lloyd's Broker on the policy is the fact that its name and logo is emblazoned on nearly every single page directly across from Hiscox's like so:

     

(ECF No. 103-1, PageID.949-68).  The next sign is the full page of the Policy bearing both the Lloyd's of London crest and the signature of Howden bringing the Policy into effect:







## Lloyd's of London

*This is to Certify that in accordance with the authorisation granted under the Contract (the number of which is specified in the Market Schedule) to the undersigned by certain Insurers at Lloyd's, whose definitive numbers and the proportions underwritten by them, which are defined in the Market Schedule, can be ascertained by reference to the said Contract which bears the Seal of Lloyd's Policy Signing Office and in consideration of the payment of the premium specified herein, the said Insurers are hereby bound, severally and not jointly, their Executors and Administrators, to insure in accordance with the terms and conditions contained herein or endorsed hereon.*

*In Witness whereof this Certificate has been signed at the place and at the date specified below;*

**For And on Behalf of;**          **Howden**
                                   **One Creechurch Place, London, EC3A 5AF**

_____ Dated in London  9th February 2022

(ECF No. 103-1, PageID.953).  There is also the fact that the premium was to be paid to Howden, as the Lloyd's Broker and that Pegasus is listed as the Halbowers' "Insurance Agent" in the Schedule set forth above, and **not** as the "Lloyd's Broker."  (ECF No. 103-1, PageID.949).  Every indicium in the Policy makes it clear that Howden is the Lloyd's Broker, and every indicium in the Policy shows that Pegasus and Ms. Van Roy were not.  That is because they had a different

role: Ms. Van Roy and Pegasus were the Halbowers' U.S.-based "Insurance Agent," while Howden was the Halbowers' London-based "Lloyd's Broker."  That is the only plausible interpretation of the unambiguous language of the Policy itself, and the Court need not accept Plaintiff's *ipse dixit* conclusions to the contrary.

       **C.**    **Information About Which the Court May Take Judicial Notice, as Well as Prior Precedent, Also Shows that Howden, and Not Pegasus or Ms. Van Roy, Was the Lloyd's Broker.**

"Lloyd's Broker" is not a meaningless term unique to the present Policy.  It is a licensed and regulated position within the Lloyd's market.  The Lloyd's Act of 1982, which defines the structure and rules under which the market operates, defines "Lloyd's Broker" as "a partner or body corporate permitted by the Council [the body established by the Act having control over the management of Lloyd's] to describe itself as a Lloyd's broker."[2]  Lloyd's has an application process by which an entity can seek to become a Lloyd's Broker.[3]  Based on Lloyd's public market directory, this Court can take judicial notice that Howden is a registered Lloyd's Broker, while Pegasus and Ms. Van Roy do not appear in the directory. [4]

With this background, courts in jurisdictions across the United States have interpreted the term Lloyd's Broker narrowly within this context of the Lloyd's market, routinely giving it the same meaning as the plain language of the Policy instructs.  The Sixth Circuit has held that a

---

[2] This Court can access a copy of the Lloyd's Act of 1982 on the Lloyd's website at https://assets.lloyds.com/assets/pdf-lloyds-acts-dec08lloydsact-1982-2008/1/pdf-lloyds-acts-Dec08LloydsAct%201982_2008.pdf.   In ruling on a Rule 12(b)(6) motion, a court may supplement the facts alleged by considering facts susceptible to judicial notice under Fed. R. Evd. 201.  *See Eggerson v. U.S.*, 2006 WL 1720252, at \*3 (W.D. Mich. June 22, 2006).  Among other things, a Court may take judicial notice of public records of governmental entities, authoritative sources of foreign law, and undisputed information on a private entity's website. *See Talavera Hair Products, Inc. v. Taizhou Yunsung Electrical Appliance Co., Ltd.*, 2021 WL 824768, at \*7 n.3.

[3] https://www.lloyds.com/join-lloyds-market/broker.

[4] https://ldc.lloyds.com/market-directory.

Lloyd's Broker is "an insurance broker, known as a Lloyd's broker, who insures part of the risk with an underwriter representing a syndicate, known as the lead syndicate." *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 42 (6th Cir. 1994) (citing Daniel M. Bianca, *The Workings of the London Market, in Lloyd's, the ILU, and the London Insurance Market 1990,* 57, 61–71 (1990))*; see also Edinburg Assur. Co. v. R.L. Burns Corp*., 479 F. Supp. 138, 144 (C.D. Cal. 1979), *aff'd except as to prejudgment interest*, 669 F.2d 1259 (9th Cir. 1982) ("Only brokers who have been approved by the Committee of Lloyd's are permitted to place risks with Lloyd's underwriters.  Such brokers are known as 'Lloyd's brokers'"); *Oppenheimer Bros. Inc. v. Joyce & Co.*, 154 N.E.2d 856, 859 (Ill. App. Ct. 1958) ("The underwriters cannot accept insurance except from a Lloyd's broker, that is 'a person who is accredited to go into the room and place risks with it'"); *Travelers Indem. Co. v. Booker*, 657 F. Supp. 280, 282 (D.D.C. 1987) ("Persons wishing to purchase insurance from Lloyd's may not do so directly, but must instead act through a broker who has been approved by Lloyd's to place risks with Lloyd's syndicates").

Based on the functioning of the Lloyd's market, and Lloyd's Brokers' role within, courts have also routinely held that a Lloyd's Broker is the agent of the insured.  *Booker*, 657 F. Supp. at 282.  This is because the insured does not generally communicate directly with a syndicate providing insurance, instead communicating through a Lloyd's Broker.  *Oppenheimer Bros*., 154 N.E.2d at 859.  As such, once a Lloyd's Broker has obtained the necessary agreements to insure from the insurer syndicates, it is the Lloyd's Broker that forwards the completed policy and slip to the Lloyd's Policy Signing Office, formalizing the policy forms and terms.  *Booker*, 657 F. Supp. at 283.

The Policy itself makes it clear that Howden is the Lloyd's Broker, and the matters about which the Court may take judicial notice, as well as the discussed precedent, only serve to confirm

- 13 -

that interpretation.  There can be no doubt that Howden was acting as the Halbowers' Lloyd's Broker, in that Howden was retained by Pegasus to "broker" the Policy from Lloyd's, (ECF No. 103, PageID.933, ¶¶ 21-22), stamped its name on the Policy documents, delivered the Policy documents to Pegasus, (ECF No. 103, PageID.933, ¶ 22), and signed the Lloyd's of London Certification (ECF No. 103-1, PageID.953).  Plaintiff cannot create an ambiguity by unilaterally redefining a term that has been defined by statute, interpreted by courts, and understood by an entire insurance market for decades.  There is no need to look for secret, unstated understandings of the Policy language.  It is evident that Howden is the Lloyd's Broker, Plaintiff's conclusory allegation notwithstanding.

       **D.**      **The Amended Complaint Fails to Plead What Artworks from the Halbowers' Collection Were Included on a List Held by Howden.**

As demonstrated above, Howden is the Lloyd's Broker under the Policy.  Thus, for a piece of art to be covered as part of the Halbower's "**collection**," it must be on a list of "fine arts of whatsoever nature . . . as may be held on file by [Howden]."  The Court could look from now until eternity for something in the Amended Complaint that says what artworks were "on file" at Howden and never find anything.  Indeed, the Amended Complaint seems to contort itself in knots to avoid saying anything about that.

Hiscox has conceded the point that the *Cliff*, the *Path*, and the *Castle* all were "on file" at Howden, so there is no dispute that those items were covered under the Policy.  In contrast, Ms. Halbower fails to plead that the *Prairie* and the *River* were "on file" at Howden.  Perhaps the most obvious reason is that she knows Howden had never heard of them before the fire.  In any case, her failure to plead such basic facts at this late date in the case mandates dismissal with prejudice.

**II.     The Amended Complaint Fails to Plead a Claim that the Plaintiff Is Due Additional Sums for the Listed Art Works that Hiscox Has Already Paid.**

Plaintiff alleges that Hiscox breached the Policy by insufficiently compensating Plaintiff for the alleged loss of the *Path*, the *Cliff*, and the *Castle*, despite alleging that Hiscox paid the entire amount of the valuation set forth on the list of artworks held by both Pegasus and Howden.   The Policy contains a provision related to the value that an insured is due in the event that she suffers a loss of a covered artwork that is part of her "**collection**."   It makes a distinction between "Listed items" and "Unlisted items" as follows:

**Basis of valuation**

| | |
|---|---|
| **Listed items** | For items which are listed individually in the specification held by **us** or **your** insurance agent, the value is the amount insured shown for each item. |
| **Unlisted items** | For items which are not individually listed in the specification held by **us** or **your** insurance agent, the value is the market value of the item on the date of loss. |

**How much we will pay**

| | |
|---|---|
| **Total loss** | If an item is lost or destroyed **we** will pay the amount insured of that item as shown in the basis of valuation above. |

(ECF No. 103-1, PageID.957).   The "list" referenced in this section, unlike the list relevant to the definition of the "**collection**," can be held by either Hiscox or the insured's insurance agent.   As described above, the Halbowers' insurance agent is Pegasus, including Ms. Van Roy.   (ECF No. 103, PageID.940, ¶ 85).   The Amended Complaint pleads that at the time that the policy was bound Ms. Van Roy, and therefore Pegasus, had in her possession two lists of artworks.   The first was the June 2021 Appraisal that Mr. Halbower says he initially sent to Ms. Van Roy on November 17, 2021.   (ECF No. 103, PageID.932, ¶¶ 16-17).   The Amended Complaint alleges, and Hiscox does not deny, that it contained entries for the *Cliff*, the *Path*, and the *Castle*, including their appraised value.   (ECF No. 103, PageID.932, ¶¶ 16-19).   In addition, Mr. Halbower says he sent Ms. Van Roy the November 2021 Inventory later the same day he sent the June 2021 Appraisal.

(ECF No. 103, PageID.932-33, ¶¶ 18-19).  There are no allegations in the Amended Complaint regarding what documents were in the possession of Hiscox.

It is self-evident from the facts pled by Plaintiff herself that the *Cliff*, the *Path*, and the *Castle* were "individually listed in the specification held by [Howden] or [Pegasus]."  Therefore, they are "Listed items" for the purposes of the Policy's Basis of valuation provision.  Under that provision, the amount to be paid to the insured is, "the amount insured shown for each item."  Thus, Hiscox was obliged to pay the appraised amounts for the *Cliff*, the *Path*, and the *Castle* set forth on the lists Mr. Halbower says he sent to Ms. Van Roy at Pegasus before the fire.  That is exactly what the Amended Complaint says happened: Hiscox paid the full amount of the appraised value contained in the lists Mr. Halbower says he provided to the Halbowers' insurance agent, Pegasus, prior to the binding of the Policy.  (ECF No. 103, PageID.940-41, ¶¶ 81-82, 88-89). Ms. Halbower is entitled to nothing more, and this claim should be dismissed with prejudice.

Plaintiff may wish that the value of the coverage provided by the Policy was higher than it was.  That does not make it so.  Plaintiff's own allegations and the plain language of the Policy demonstrate that Hiscox has paid the entire amount due under the Policy for the *Path*, the *Cliff*, and the *Castle*.

## III.   Plaintiff's Claim Under Section 155 Is Deficient as a Matter of Law.

Despite her contention that Michigan law applies to the coverage dispute at hand, Count III of Plaintiff's Amended Complaint seeks attorneys fees and other relief under Section 155 of the Illinois Insurance Code.  Section 155 provides an extracontractual remedy to policyholders only where an insurer's refusal to recognize liability and pay a claim under the policy is vexatious and unreasonable.  *Kroutil v. State Farm Mut. Auto. Ins. Co.*, 195 N.E.3d 376, 381 (Ill. App. Ct. 2021). Conclusory allegations that an insurer acted vexatiously or unreasonably, without any factual support, are insufficient to state a plausible claim for relief under Section 155. *Bao v.*

*MemberSelect Ins. Co.*, 2022 WL 1211509, at *3 (N.D. Ill. Apr. 25, 2022). A plaintiff "must instead point to *facts* showing that the insurer's behavior was vexatious and unreasonable—that is, willful and without reasonable cause." *Souza v. Erie Ins. Co.*, 2023 WL 4762712, at *6 (N.D. Ill. July 25, 2023) (internal quotation marks and citation omitted) (emphasis supplied); *see also Leonard S. v. Health Care Serv. Corp.,* 2023 WL 7182988, at *3 (N.D. Ill. Nov. 1, 2023) (dismissing Section 155 claim where the plaintiff merely appended the statutory element "unreasonable and vexatious" to a claim that coverage was wrongfully denied).

Here, Plaintiff includes a *single* conclusory allegation to support her Section 155 claim:

> Given the terms and conditions of the Fine Art Policy as described above, Hiscox's delay in settling Plaintiff's claim and its failure to recognize liability and pay Plaintiff's claim in full is vexatious and unreasonable.

(ECF No. 103, PageID.946, ¶ 134). Like the policyholder in *Leonard*, simply adding the phrase "vexatious and unreasonable" to her pleading is not sufficient for Plaintiff to plead a proper Section 155 claim. Nor could Plaintiff ever plead facts showing such conduct on the part of Hiscox, since Plaintiff alleges that there was a good faith dispute between the parties with respect to coverage for certain artworks under the Hiscox policy. (ECF No. 103, PageID.941, ¶¶ 93-94) (alleging Hiscox refused to cover the *Prairie* on the basis that it was not held on file by Howden, but that Hiscox was continuing to investigate coverage). If nothing else, Plaintiff's significant amendments to her complaint, completely changing her theory of coverage almost two years after filing this action defeat any alleged "delay" in settling the claim and demonstrate, at least on Hiscox's part, a good faith dispute. Accordingly, Count III should be dismissed with prejudice.

## IV. This Is the Unusual Case Where Rule 12(b)(6) Dismissal with Prejudice Is Appropriate and Necessary.

Hiscox is mindful of the Court's comments it made at its earlier hearing on the motion for judgment on the pleadings and the high threshold for relief under Rule 12. Few cases can be

resolved through that rule.  This is one of the unusual cases that can, and should be, resolved in that manner.

Much has changed since Plaintiff's first complaint.  Plaintiff's theory basically boiled down to a truth telling contest.  Ms. Halbower said her agent, Ms. Van Roy, was going to testify that she sent a list containing four of the destroyed artworks, the *Cliff*, the *Path*, the *Castle*, and the *Prairie*, to Howden at a time when the relevant Howden employee was on vacation – and prior to the Policy being bound.  Ms. Van Roy said she had documentary evidence to back up her story even though Howden had no record of receiving the email.  In short, she was going to say that Howden did have a list "on file" that included four of the five artworks at the time of the fire.

In contrast, Hiscox said that Howden had looked diligently for the phantom email and could find no evidence of it.  Therefore, Hiscox was going to deny that the *Prairie* and the *River* were on a list "on file" at Howden.  The Court understandably thought some discovery was needed to see what the evidence was.  It also appeared to contemplate a trial that was principally about a jury deciding whether Ms. Van Roy or the Howden employees were more believable.  All of that made very good sense – at least with the facts that were available many months ago.

Those are no longer the facts.  Since then, Hiscox has been put through a veritable obstacle course to try to get information about the "phantom email" from Ms. Van Roy.  It served third-party subpoenas on Ms. Van Roy, Pegasus, Hanasab (her agency after Pegasus) and others to try to get to the truth of what happened.  After months of effort – and obstruction by not only Ms. Van Roy, but also Ms. Halbower – Hiscox finally was able to get possession of Ms. Van Roy's hard drive (with the assistance of Magistrate Judge Berens granting Hiscox's motion to compel).  Low and behold, when Hiscox got that information, the forensic evidence was clear that Ms. Van Roy had created phony emails that were supposedly the "evidence" that she had sent the email that Ms.

Halbower claimed went to Howden. This information was produced by Plaintiff in October and could not have been contested much beyond that point. It took between then and now for Ms. Halbower to change her theory for breach of contract from relying on the phantom (now false) email being in Howden's possession to the equally false claim that Pegasus, and not Howden, was actually the Lloyd's Broker.

No longer will this case turn on whether the jury will believe Ms. Van Roy or Howden. No one is going to argue that Ms. Van Roy was telling the truth. She was not; Howden was. Now the case comes down to two simple legal issues that are controlled by unambiguous contract language. Howden is the Lloyd's Broker, not Pegasus or Ms. Van Roy. Howden never heard of the *Prairie* and the *River* before the fire, let alone having a list including those artworks "on file." The Halbowers were entitled to the appraised value they provided for the three artworks that were "on file" with Howden at the time of the fire. It is undisputed that is what they got. That is the end of the story here.

This is not a case where a defendant is jumping the gun and asking to end a case before a plaintiff has even had some opportunity to get discovery to try to prove her case. This case is almost two years old, and discovery closes in less than three months. Plaintiff has had months to take discovery to substantiate her case. What has actually happened is that we have all learned that the case is meritless and based on perjured testimony from Ms. Van Roy. Plaintiff now has filed an Amended Complaint that contorts itself to try to avoid dismissal. It is time for this charade to end. This Court should grant dismissal with prejudice.

## **CONCLUSION**

It is no doubt frustrating to Plaintiff that certain artworks that she alleges were lost in the June Fire are not covered by the Policy. It is also undoubtedly further frustrating to Plaintiff that the actions (or inactions) of her chosen agent, exacerbated by fraudulent conduct in the claims

process, only compounded the problem.  However, Plaintiff's frustration does not allow her to rewrite the Policy to create coverage where it does not exist.  While Plaintiff is tying herself in knots to avoid Ms. Van Roy's mistakes and fraud on her behalf, this Court need not do so.

Based on Plaintiff's own pleadings and the plain language of the Policy, it is clear that there simply is no coverage for either the *Prairie* or the *River*.  Further, it is clear that Hiscox has paid the entire amount due under the Policy for the *Cliff*, the *Path*, and the *Castle*.  Finally, Plaintiff's request for damages under Section 155 is plainly deficient as a matter of law.

Plaintiff has had a year and a half of discovery in which to find support for her claims.  The Amended Complaint demonstrates she has found the opposite.  As such, this Court should dismiss the Amended Complaint, *with prejudice*, and grant any other relief that this Court deems just.

Respectfully submitted,

*Attorneys for Defendant/Counter-Plaintiff*

Dated: July 12, 2024

By: /s/Alexander W. Ross
Alexander W. Ross (IL 6283882)
Clinton E. Cameron (P45567)
Courtney D. Logli (IL 6321409)
CLYDE & CO US LLP
Attorneys for Defendant/Counter-Plaintiff
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 635-7000
alexander.ross@clydeco.us
clinton.cameron@clydeco.us
courtney.logli@clydeco.us

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to LCivR 7.2(b)(ii), that Defendant/Counter-Plaintiff's Memorandum in Support of Its Motion to Dismiss Pursuant to Federal Rule Of Civil Procedure 12(b)(6) in the above-captioned case complies with the word limit set forth in LCivR 7.2(b)(i), and that the Brief, excluding those parts exempted by LCivR 7.2(b)(i), contains 5,767 words. Microsoft Word v. 2401 was used to generate the word count.

/s/Alexander W. Ross_____

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 12, 2024, a true and correct copy of the foregoing Defendant/Counter-Plaintiff's Memorandum in Support of Its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(6) was filed electronically via the Court's CM/ECF electronic filing system. Notice of this filing will be provided to all counsel of record via the Court's CM/ECF system.

/s/Alexander W. Ross