UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE SCHULZ HALBOWER, as Trustee
of THE HALBOWER LEGACY TRUST,

Case No. 1:22-cv-00964

      Plaintiff/Counter-Defendant,

Hon. Robert J. Jonker

v.

HISCOX SYNDICATE 33 OF LLOYD'S
OF LONDON,

      Defendant/Counter-Plaintiff.

| | |
|---|---|
| Ronald G. DeWaard (P4417) | Clinton E. Cameron (P45567) |
| Brion B. Doyle (P67870) | Alexander Ross |
| VARNUM LLP | Courtney Dawn Logli |
| *Attorneys for Plaintiff/Counter-Defendant* | CLYDE & CO US LLP |
| Bridgewater Place, P.O. Box 352 | *Attorneys for Defendant/Counter-Plaintiff* |
| Grand Rapids, MI  49501-0352 | 55 West Monroe, Suite 300 |
| (616) 336-6000 | Chicago, IL  60603 |
| rgdewaard@varnumlaw.com | (312) 635-7000 |
| bbdoyle@varnumlaw.com | Clinton.cameron@clydeco.us |
| | Alexander.ross@clydeco.us |
| | Courtney.logli@clydeco.us |

## PLAINTIFF/COUNTER-DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..............................................................**Error! Bookmark not defined.**

INDEX OF AUTHORITIES.........................................................**Error! Bookmark not defined.**

I.    INTRODUCTION ..............................................................**Error! Bookmark not defined.**

II.   BACKGROUND ................................................................**Error! Bookmark not defined.**

    A.    PLAINTIFF'S THEORY OF RECOVERY HAS NOT CHANGED.**ERROR! BOOKMARK NOT DEFINED.**

    B.    DISCOVERY TO DATE FURTHER SUPPORTS PLAINTIFF'S COVERAGE ARGUMENTS. ..................................................**ERROR! BOOKMARK NOT DEFINED.**

    C.    IN THE MIDDLE OF DISCOVERY, HISCOX SURPRISINGLY RENEWED ITS PREVIOUSLY REJECTED FACIAL ATTACK ON PLAINTIFF'S COMPLAINT. ...................8

III.  LAW AND ARGUMENT .................................................................9

    A.    LEGAL STANDARD. .........................................................................9

    B.    LEAVE TO AMEND IS WARRANTED UNDER FED. R. CIV. P. 15(A)(2). ............. **Error! Bookmark not defined.**

        1.    Plaintiff's Amendment is Not Futile. .........**Error! Bookmark not defined.**

        2.    Plaintiff's Motion for Leave Should be Granted Despite the Pending Motion to Dismiss....................................................................12

        3.    Hiscox Has Proper Notice of the Allegations in the Second Amended Complaint, the Amendment is not Sought in Bad Faith, and There is No Repeated Failure to Repair Deficiencies.........................13

        4.    Hiscox Will Not Suffer Any Undue Prejudice.**Error!    Bookmark    not defined.**

IV.   CONCLUSION...............................................................**Error! Bookmark not defined.**

i

# INDEX OF AUTHORITIES

**Cases**

*Adams v. Gould Inc.*,
739 F.2d 858 (3d Cir. 1984)........................................................................... 12

*Auto Club Ins. Ass'n v. DeLaGarza*,
444 N.W.2d 803 (Mich. 1989)....................................................................... 12

*Foreback v. J.C. Expediting*,
Case No. 13-10185, 2013 WL 12181764 (E.D. Mich. October 15, 2013) ...................... 13

*Halasz on behalf of H.H. v. Cass City Pub. Sch.*,
No. 1:22-CV-13158, 2024 WL 4045447 (E.D. Mich. September 4, 2024)...................... 13

*Hensley Mfg. v. ProPride, Inc.*,
579 F.3d 603 (6th Cir. 2009) ...................................................................... 9, 10

*Klein by Klein v. Caterpillar Inc.*,
581 F. Supp. 3d 912 (E.D. Mich. 2022)............................................................... 9

*Morse v. McWhorter*,
290 F.3d 795 (6th Cir. 2002) .......................................................................... 14

*Rose v. Hartford Underwriters Ins. Co.*,
203 F. 3d 417 (6th Cir. 2000) ........................................................................... 9

*Smith v. Blue Cross Blue Shield*,
No. 2:23-CV-12003, 2024 WL 4524124 (E.D. Mich. August 29, 2024) ........................ 9

*United States v. Bon Secours Health Sys., Inc.*,
567 F. Supp.3d 429 (S.D.N.Y. 2021)............................................................... 13

**Treatises**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1487 (3d ed.) ........ 13

## I.    __INTRODUCTION__

This case involves Plaintiff's insurance coverage action claiming that certain paintings lost in a fire were covered by a Policy issued by Defendant Hiscox, and that certain other paintings were undervalued by Hiscox.  At the outset of the case, this Court heard competing Motions for Judgment on the Pleadings.  Plaintiff argued that the Policy is unscheduled and covers all the paintings that were lost, regardless of whether the name of a painting was listed on a file held by an undefined "Lloyd's Broker."  Hiscox argued the opposite, that the Policy is scheduled, and there is only coverage if each painting is either listed in a schedule attached to the Policy or held on file by Howden, which Hiscox claimed was the "Lloyd's Broker" referenced in the Policy.  Whether or not Plaintiff's broker Pegasus had sent an inventory of the paintings at issue to Howden before the fire was **__never__** at issue in those cross-Motions.  Following briefing and oral argument, the Court denied both Motions, noting that it would be "pretty random" to "pick one or the other [interpretation]," as the Court could "see reasons and support in the policy" for each party's interpretations, and could "even see economic sense for both of these interpretations."  ECF No. 40; PageID. 385.  The Court then ordered the parties to conduct discovery, in light of the Court's desire for the "context and understanding" that "full plenary discovery can bring."  *Id.* at PageID.370.

In her initial Complaint, in addition to the claim that the Policy was unscheduled and provided coverage for unlisted items, Plaintiff also claimed Pegasus had sent the inventory to Howden listing the subject paintings, as Pegasus had proffered purported evidence that it had. However, discovery revealed Pegasus had not sent that inventory, so Plaintiff sought to amend her complaint to correct that allegation.  Moreover, because discovery had yielded substantial evidence that bolstered Plaintiff's contention that the Policy was unscheduled, as well as establishing new

arguments for coverage, Plaintiff added allegations in support of her claims. Plaintiff, however, never changed her initial position addressed in the cross-Motions that the Policy afforded coverage of any unlisted paintings, because the Policy provided coverage for both listed and unlisted items.

In response to Plaintiff's Amended Complaint, Hiscox filed a Motion to Dismiss. Such a motion seemed pointless in that the Court had already ruled full plenary discovery was necessary to decide the issues that were the subject of the initial motions on the pleadings; those issues remained, along with additional hurdles for Hiscox to clear with the introduction in the Amended Complaint of new claims for coverage based upon evidence identified in discovery to date. Moreover, oral argument and the parties' briefing on Hiscox's Motion to Dismiss demonstrated that the parties' core arguments had not changed. And while Hiscox did not present any new information it gleaned from discovery, Plaintiff was able to provide the Court with important context gained through discovery, even as Plaintiff was somewhat constrained in its presentation by the framework of a Rule 12(b)(6) motion. This included key testimony from Hiscox's corporate representatives that showed that only Pegasus—and not Howden—can be the "Lloyd's Broker" as that term is used in the Policy, a second, alternative argument for coverage for the lost artwork..

Because the parties were making the same core Policy interpretation arguments, and because discovery, while incomplete, materially improved Plaintiff's position, Plaintiff reasonably expected the same result on Hiscox's Motion: that it would be denied and the arguments deferred and considered again on summary judgment at the close of discovery. The Court, however, took the Motion under advisement and indicated it would review the deposition testimony of the Hiscox corporate representatives and issue a written opinion. While that deposition testimony does reveal why Hiscox cannot prevail on its arguments, discovery has revealed other material support for Plaintiff's position that was not included in Plaintiff's First Amended Complaint or briefing,

consistent with notice pleading, the Court's previous ruling that the claims were well plead, and the strictures of a Rule 12(b)(6) motion.  This evidence includes the fact that, in its quote, <u>Hiscox presented the Policy to Pegasus, and in turn to Plaintiff, as being unscheduled</u>; evidence that informed Plaintiff's belief from the very beginning that all of the artwork in Plaintiff's collection, including unlisted items, was covered, subject to a $100 million limit for each incident of loss.

Motivated by the concern that the Court could decide this matter without a complete record, which would be inconsistent with the Court's previous direction to the parties, Plaintiff seeks leave to file a second amended complaint to include additional factual allegations supported by information gained through discovery, and to provide the Court with more context and understanding.  And while these additional facts make even clearer that Hiscox's Motion should be denied, the Court still lacks the complete picture.  Plaintiff seeks to complete discovery, including of Howden, the party that drafted one of the two documents that together comprise the Policy.  Plaintiff also seeks relevant testimony of the Hiscox wording specialists who carefully chose the language for the Policy and the contrasting language in the renewal policies.  At that point, with the full context and understanding from "plenary discovery" to present to the Court, Plaintiff is confident that its coverage arguments will prevail on a motion for summary judgment.

## II.    <u>BACKGROUND</u>

### A.    PLAINTIFF'S THEORY OF RECOVERY HAS NOT CHANGED.

Plaintiff's theory of recovery has never depended on whether Pegasus forwarded lists of certain pieces of Plaintiff's fine art to Howden.  Rather, Plaintiff's argument from the outset of this case is that the Policy is an unscheduled Policy and the identity of the "Lloyd's Broker" is irrelevant for coverage of the five works of art destroyed in the June 2022 fire.  *See, e.g.*, Plaintiff's Response to Hiscox's Motion for Judgment on the Pleadings, ECF No. 33; PageID.313 (emphasis added):

3

> Hiscox assumes that Howden is the Lloyd's Broker who may—or may not—have held a file containing "Fine Arts of whatsoever nature."  There is no support for this interpretation in the plain language of the Policy because . . . the Policy does not define "Lloyd's Broker."  <u>Regardless, whether Howden is unambiguously the "Lloyd's Broker" or not, the phrase "as may be held on file by the Lloyd's Broker" cannot limit coverage for Plaintiff's "collection."</u> * * * <u>[N]othing in the Policy apprises Plaintiff that coverage for her "Fine Arts of whatsoever nature" that make up her "collection anywhere in the world" is actually limited to itemized works of fine arts.</u>

For its part, Hiscox argued that the Policy is a scheduled Policy only covering pieces held "on file" by an undefined "Lloyd's Broker," Hiscox claims unambiguously referred to Howden.  It was on these opposing theories—unrelated to any e-mail from Pegasus to Howden—that this Court denied cross-Motions for Judgment on the Pleadings in April 2023.  ECF No. 37, PageID.351.

At the hearing on the parties' cross-Motions, the Court stated it could "see reasons and support in the [P]olicy" for each party's interpretations and could "even see economic sense for both of these interpretations."  *Id.* at PageID.385.  The Court therefore declined to rule before the parties completed discovery:

> [F]or me to at this point pick one or the other [interpretation] I think would be pretty random.  At least I would feel uncomfortable with it without having the context that a **<u>full plenary discovery</u>** can bring.  Maybe we'll be back at summary judgment fighting over the exact same language and fighting over the exact same dead horse, but at least I'll feel better about it at that point because I'll know that the parties have **<u>exhausted</u>** the options that would give me context and understanding.

*Id.* (emphasis added).

### B.    DISCOVERY TO DATE FURTHER SUPPORTS PLAINTIFF'S COVERAGE ARGUMENTS.

As the Court instructed, the parties engaged in discovery, which has revealed additional context and support for Plaintiff's coverage arguments.  <u>This includes the fact that Hiscox quoted an unscheduled policy to Pegasus and Plaintiff.</u>  Communication between Howden and Pegasus show that Howden, with authority from Hiscox, presented an e-mail proposal to Pegasus (the

"Proposal E-mail") and a proposed policy (the "Proposed Policy"), both of which provided for "100M" in blanket coverage for Plaintiff's collection.

> [W]e are pleased to advise we have approached Hiscox who have provided a very competitive quotation. **We have provided a quotation with the limit of USD 100M but the premium is calculate [sic] on the USD 93,534,915 total value at a rate of 0.0625%.**

*See* Second Amended Complaint at ¶ 25 (the "SAC"), **Exhibit A**; Ex. B to proposed SAC.

Howden provided the Proposed Policy for "$100M" despite the fact that the information Howden received from Pegasus was Plaintiff's recent appraisal for certain artwork totaling $93,534,915; an amount significantly less than the coverage limit provided by Hiscox and Howden. *Id.* at ¶ 26. <u>Thus, Hiscox and Howden knew they were providing blanket coverage for an unscheduled policy, as there was no other justification for Hiscox and Howden to provide $7,000,000 of extra coverage untethered to the June 2021 Appraisal</u>. Pegasus then solicited a competing quote from another insurance carrier, AIG, which was also willing to provide $100,000,000 in blanket coverage. *Id.* at ¶ 40. Pegasus presented both of these quotes to Mr. Halbower as providing coverage for "Listed/<u>Scheduled</u>" <u>and</u> "Unlisted/<u>Unscheduled</u>" pieces:




## Collections Policy

**Named Insured:** Matthew & Julie Halbower
**Policy Number:** TBD
**Policy Term:** TBD

| Description | Fine Art Policy | Collections Policy |
|---|---|---|
| **Insurance Carrier** | **Lloyd's of London** | **AIG** |
| | | |
| Maximum limit of Indemnity at Any Named Location | $ 100,000,000 | $100,000,000 |
| Total Sum Insured | $ 93,561,915 | $100,000,000 |
| | Rate: 0.0625% | Rate: 0.07 |
| | | |
| Basis of Valuation: | | |
| Listed/Scheduled Items | insured for the amount listed | insured for the amount listed |
| Unlisted/Unscheduled Items | Insured for the Market Value on date of loss | Insured for the Market Value on date of loss |
| Pairs and Sets | *You* decide if payment is for the single item, or for the pair | *Decided by Carrier* |
| Newly acquired items | Additional 25% coverage provided for no more than 60 days | Additional 25% coverage provided for no more than 60 days |
| Total Loss | *You* determine if an item is a "Total Loss", not the insurer | *Decided by Carrier* |
| Jewelry | N/A | $ 50,000 |
| Other Jewelry | N/A | $ 50,000 |
| Collectibles – | N/A | |
| 1961 Chevy Corvette – Agreed Value | | $ 200,000 |
| 1966 Chevy Corvette – Agreed Value | | $ 200,000 |
| **Annual Premium** | $ 58,476.00 | |
| **Illinois Surplus Lines Taxes** | $ 2,047.00 | |
| **Illinois Surplus Lines Stamping Fee** | $ 44.00 | |
| **Illinois State Fire Marshall Tax** | $ 88.00 | |
| **Total Annual Premium** | $ 60,655.00 | $ 66,785.00 |

*Id.* at ¶ 42.  Additionally, discovery has revealed that while Hiscox later decided it was not willing to calculate the premium for a $100,000,000 Policy on a lesser amount and provide Plaintiff with $7,000,000 in free insurance, the language in the Proposed Policy and the issued Policy were identical in every other respect, including the Policy's coverage for "Unlisted Items" at "fair market value of the items on the date of loss."  *Id.* at ¶¶ 46-48.

Plaintiff has also obtained key testimony and admissions from Hiscox's corporate representatives.  Contrary to fundamental rules of contract construction, these representatives testified that the "Unlisted Items" provision should be entirely "crossed out" of the Policy.

Moreover, the representatives conceded the Policy does not fairly apprise the insured of what is "held on file by the Lloyd's Broker," or make clear who the "Lloyd's Broker" even is; and admitted the Policy provides no explanation to the insured of who Howden is, despite the fact Howden drafted half of the Policy. The representatives also provided testimony demonstrating Hiscox's interpretation of the Policy is unsustainable when they opined that "Insurance Agent," though expressly defined in the Policy as Pegasus, is actually Howden in the valuation provision.

In addition, Plaintiff now has two renewal policies to present to the Court, each of which significantly bolsters Plaintiff's coverage arguments. This includes the Second Renewal, which Hiscox drafted in an attempt to conform the terms of the Policy to Hiscox's corporate representative testimony. Among other material changes, the renewals state the "interest" as "Works of art per the attached schedule," and in fact each attached a schedule of fine art. And unlike the original Policy, multiple provisions in the Second Renewal expressly excluded coverage for unlisted items. The Second Renewal also conspicuously defined the "Lloyd's Broker" as "Howden Insurance Brokers Limited," a critical omission in the original Policy.

This testimony and evidence only confirmed what Plaintiff always knew and previously alleged: Hiscox issued the Policy as an unscheduled Policy which provided coverage for unlisted items, and it has no colorable reading of the Policy that justified denying coverage. This same evidence is what prompted Plaintiff to amend her Complaint the first time. Plaintiff did so in the context of having already survived a motion to dismiss on fewer facts and without any of the admissions or testimony from Hiscox. Additionally, by that time it was clear from completed forensic analysis that Pegasus had, in fact, not sent Howden the November 17, 2021 e-mail inventory listing the *Prairie*, and Plaintiff corrected those allegations in her First Amended Complaint. Plaintiff's primary argument—that the Policy is an unscheduled Policy and the

specification of values can be held by the insurance agent after the date of loss—remained. Plaintiff also brought forth allegations that the Insurance Agent, Pegasus, is the Lloyd's Broker under the Policy.  And while Plaintiff's First Amended Complaint added detail to her allegations via Hiscox's testimony, Plaintiff was not required to provide every fact or discuss all the evidence supporting the interpretation of the Policy as providing blanket coverage.

### C.   IN THE MIDDLE OF DISCOVERY, HISCOX SURPRISINGLY RENEWED ITS PREVIOUSLY REJECTED FACIAL ATTACK ON PLAINTIFF'S COMPLAINT.

While discovery remained ongoing, Hiscox filed a Motion to Dismiss Plaintiff's First Amended Complaint.  *See* ECF No. 108.  What Hiscox actually filed was, in effect, a motion for reconsideration of the Court's decision on Hiscox's Motion for Judgment on the Pleadings. Hiscox's argument in its Motion was identical to its previous argument that the plain language of the Policy unambiguously created a scheduled policy requiring items to be held on file by Howden, and limited the amount of recovery for covered paintings to the values listed in the June 2021 Appraisal.

Hiscox's arguments in support of its Motion also demonstrated that its denial of coverage could not survive the evidence supporting the new allegations in the First Amended Complaint. Specifically, in their Reply Brief, and again at oral argument, Hiscox's attorneys took positions in response to the new evidence that were directly contrary to the testimony of their 30(b)(6) witnesses and to the plain language of the Policy.  Hiscox's attorneys now argue that the "specification" in the valuation provision and what "may be held on file" in the interest provision are <u>different</u> documents, even though their witnesses said the exact opposite.  Hiscox's attorneys also create out of whole cloth an argument that the "unlisted items" provision <u>does</u> apply to the Policy and is used to describe listed items with unlisted <u>values</u>, despite their witnesses' testimony that the provision could be crossed out of the Policy altogether.  Knowing this testimony was

8

unsustainable, Hiscox's counsel again contradicted their representative's binding testimony that "Insurance Agent" in the valuation provision referred to Howden, despite the term being defined in the Policy as Pegasus.

Following oral argument on Hiscox's Motion, during which the Court indicated it would review the corporate representative testimony and issue a written opinion, Plaintiff seeks leave to file the SAC. Though Plaintiff maintains the First Amended Complaint easily passes muster under the rigorous standards to dismiss a complaint at the pleadings stage, additional facts from discovery and Hiscox's counsel's own arguments further clarify that the Policy cannot—under any circumstance—be read as an unambiguously scheduled Policy where items must be held on file by Howden and values for listed items must be held prior to the date of loss.

## III.    LAW AND ARGUMENT

### A.    LEGAL STANDARD

Under Rule 15(a)(2), "a party may amend its pleading . . . with the court's leave" and "[t]he court should freely give leave when justice so requires." "The case law in this Circuit manifests liberality in allowing amendments to a complaint." *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 918 (E.D. Mich. 2022).

### B.    LEAVE TO AMEND IS WARRANTED UNDER FED. R. CIV. P. 15(A)(2).

#### 1.    Plaintiff's Amendment is Not Futile.

A proposed amendment is not futile if it could withstand a motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F. 3d 417, 421 (6th Cir. 2000). A proposed amended complaint must therefore allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Smith v. Blue Cross Blue Shield*, No. 2:23-CV-12003, 2024 WL 4524124, at *2 (E.D. Mich. August 29, 2024) (citing *Hensley Mfg.*

*v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). Reading the SAC in a light most favorable to Plaintiff, Plaintiff's argument that the Policy provides unscheduled, blanket coverage for Plaintiff's "collection anywhere in the world" is more than plausible; it is the only way to read the Policy.

Plaintiff's belief from the beginning that the Policy is unscheduled is buttressed by additional allegations in the proposed SAC demonstrating Hiscox and Howden provided Plaintiff with an unscheduled policy with blanket coverage for Plaintiff's entire fine art collection. Indeed, the SAC shows Hiscox and Howden sent the Proposed Policy to Plaintiff and Pegasus as providing a blanket "limit of USD 100M," and that, aside from a change to the "Sums Insured," the Proposed Policy's language is identical to that in the issued Policy. *See* Ex. A at ¶¶ 25-29; 46-48. The SAC attaches a policy summary sent by Pegasus to Mr. Halbower prior to coverage being bound where Pegasus communicated clearly to Mr. Halbower that the Policy would provide coverage for "unscheduled/unlisted items." The SAC further alleges that under the plain language of the Policy, the "Unlisted Items" section of the Valuation provision, when read in connection with the permissive nature of the "Interest" provision, requires that the Policy provide coverage for unlisted items and the interest provision simply provided a means for items to become "Listed Items." *Id.* at ¶¶ 62-86; 111-19. As further evidence for that position, the SAC alleges Hiscox's corporate representatives testified that the "Unlisted Items" provision needed to be written out of the Policy for their interpretation to make sense (contrary to a fundamental rule of contract construction). *Id.* at ¶ 114. Plaintiff's SAC also confirms that Hiscox, through its renewal policies, undoubtedly knew how to make the Policy one for scheduled coverage, but did not. *Id.* at ¶¶ 147-68.

The SAC also contains allegations repeated from Hiscox's own testimony showing that, even if the Policy is a scheduled policy and items <u>must</u> be held on file by the Lloyd's Broker, in

contravention of the Policy's plain language, the "Lloyd's Broker" can <u>only</u> be read as Pegasus, not Howden.  Hiscox's corporate representatives testified the "file" that "may" be held by the Lloyd's Broker for coverage, and the "specification," which provides the values for "Listed Items" in the Policy are the <u>same</u>.  *Id.* at ¶¶ 122-23.  Under the Policy, the "specification" can be held only by Hiscox or the "Insurance Agent," the latter of which is expressly defined in the Policy as Pegasus. *Id.* at ¶ 121.  Because of this language, Hiscox's representatives conceded that "Insurance Agent" and "Lloyd's Broker" had to be the same party.  *Id.* at ¶¶ 122-23.  Thus, to maintain their position on denial of coverage, the representatives were forced to defy the plain language of the Policy and claim that "Insurance Agent," as used in the valuation provision, referred to Howden, despite it being defined as Pegasus within the Policy.  Accordingly, as alleged, Pegasus is the only party that can be the "Lloyd's Broker," an undefined term in the Policy.  *Id.* at ¶¶ 122-39.

Finally, the SAC plausibly alleges, at a minimum and in the alternative, the Policy is hopelessly ambiguous based on Hiscox's proffered interpretation.  Plaintiff supports these allegations, too, with numerous facts from discovery.  *Id.* at, *e.g.*, ¶ 140 (detailing the many assumptions and benefits of the doubt that must be handed to Hiscox).  The Second Amended Complaint points out Hiscox's testimony that the Policy is a combination of two documents, drafted by two different parties at discrete points in time; which explains why terms across the two documents are inconsistent and why the Policy cannot be read harmoniously in the manner Hiscox suggests.  *Id.* at ¶ 62.  Indeed, the mere fact that Hiscox's attorneys have been forced to take positions in this litigation that are directly contrary to the positions of their own witnesses is sufficient evidence itself that the Policy is ambiguous.  The SAC proves the Policy did not fairly apprise Plaintiff of what was excluded from coverage or how items were covered at all.  *Id.* at ¶ 146.  That alone is enough, not just to carry Plaintiff's claims over the 12(b)(6) threshold, but to

carry her claims to judgment in her favor.  *See Auto Club Ins. Ass'n v. DeLaGarza*, 444 N.W.2d 803, 805-06 (Mich. 1989) ("When . . . an insurer has failed to clearly express a limitation on coverage so as to fairly apprise the insured of the extent of the coverage it purchased, it is appropriate to construe the provision under consideration against its drafter.").

## 2.    **Plaintiff's Motion for Leave Should be Granted Despite the Pending Motion to Dismiss.**

Leave to amend a complaint can be granted at any point in a case, including even after summary judgment has been granted.  *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (finding it was error for district court to deny plaintiffs' motion for leave to amend following grant of summary judgment in favor of defendants because, among other reasons, "plaintiffs had a colorable excuse for not amending earlier since the district court accepted the facial validity of their original legal theory and the parties had not "litigate[d] the facts of th[e] case").

Here, because Plaintiff's Complaint had already survived a Rule 12 attack on the basis that both parties' interpretations were viewed by the Court as plausible, Plaintiff had no reason to believe her First Amended Complaint was vulnerable to a motion to dismiss when it included the same theory that previously survived dismissal, contained additional facts and theories, and was brought in the middle of discovery.  It was not until this Court's remarks at the November 4 hearing that Plaintiff became concerned the Court might actually entertain Hiscox's previously-rejected arguments on the same Policy.  While Hiscox's Motion to Dismiss should be denied, Plaintiff believes the additional facts alleged in the SAC would further dictate that result, and, in light of the Court's previous ruling and direction, Plaintiff has a "colorable excuse for not amending earlier."  *Adams*, 739 F.2d at 868.

12

**3.    Hiscox Has Proper Notice of the Allegations in the Second Amended Complaint, the Amendment is not Sought in Bad Faith, and there is No Repeated Failure to Repair Deficiencies.**

Hiscox cannot claim it has insufficient notice of the allegations in Plaintiff's proposed SAC, which are rooted in two primary sources: (1) Hiscox's 30(b)(6) testimony; and (2) documents produced in discovery.  Hiscox is aware of all of this evidence.  Hiscox's own witnesses proffered the testimony that is detrimental—and directly contrary to—the case its lawyers have put forth, and the documents Plaintiff points to in support of its allegations have all been produced in discovery.  Additionally, the additional evidence in the SAC merely expands on Plaintiff's factual and legal theories in the First Amended Complaint; it does not overhaul them.  *Halasz v. Cass City Pub. Sch.*, No. 1:22-CV-13158, 2024 WL 4045447, at *8 (E.D. Mich. September 4, 2024) (finding no insufficient notice where original complaint was "flush with factual allegations" that were similar to those proffered by the amended complaint).  Plaintiff's proposed amendment is also not sought in bad faith, but only to ensure that additional known facts are alleged to support Plaintiff's claims for coverage.  *See* Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1487 (3d ed.) (noting some examples of bad faith as attempting to destroy removal jurisdiction or avoid a statute of limitations).  Moreover, given the context of the Court's previous ruling, Plaintiff's proposed SAC in no way represents a repeated failure to cure deficiencies.

**4.    Hiscox Will Not Suffer Any Undue Prejudice.**

Finally, Hiscox will suffer no undue prejudice if Plaintiff is allowed to amend its Complaint.  Undue prejudice does not involve a defendant's need to respond to an additional pleading.  *See United States v. Bon Secours Health Sys., Inc.*, 567 F. Supp.3d 429, 438 (S.D.N.Y. 2021); *see also Foreback v. J.C. Expediting*, Case No. 13-10185, 2013 WL 12181764, at *2 (E.D. Mich. October 15, 2013) (recognizing that, although amendment would "cause the [d]efendants to

incur additional expense . . . this prejudice does not constitute 'undue prejudice'").  Nor is mere "inconvenience" by an amendment considered "undue."  *See Morse v. McWhorter*, 290 F.3d 795, 801 (6th Cir. 2002).  Rather, undue prejudice exists when an amended pleading raises "the prospect of duplicative discovery," or would require a defendant to "substantially revise [a] present defense strategy because" the amended complaint "add[s] new substantive claims or overhauls plaintiffs' theory of the case[.]"

Plaintiff's proposed amendment does not add any new parties or substantive claims, and simply seeks to incorporate facts already known to the parties; primarily from Hiscox's deposition testimony and its conduct in the midst of this litigation (e.g., amending the Policy <u>twice</u>).  Hiscox will also not be forced to "revise any present defense strategy."  Hiscox's primary defense throughout the entirety of this litigation is that the Policy is a scheduled Policy and Howden is the Lloyd's Broker.  The proposed SAC, while pointing to testimony that makes Hiscox's argument even more far-fetched than it was at the outset, does not necessitate a change in course.  Furthermore, there is no risk of "duplicative discovery," as Plaintiff has already sought discovery on the facts related to Howden's role in drafting key parts of the Policy, and that and other Discovery motions are currently pending.  *See* ECF 113.[1]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave for Plaintiff to file her Second Amended Complaint, attached as Exhibit A.

---

[1] In addition, the principal that a movant must demonstrate "good cause" when the amendment would require a change to a Rule 16 scheduling order is not applicable here.  *See Horn v. City of Mackinac Island*, No. 2:11-CV-448, 2013 WL 12421762, at *1 (W.D. Mich. January 23, 2013).  This Court stated at the November 4 hearing that if Hiscox's Motion were denied, the Court would need to confront a variety of pending issues including discovery matters and Hiscox's requested addition of new parties and claims.  A new scheduling order will need to be issued whether this case proceeds on Plaintiff's First or Second Amended Complaint.

Respectfully submitted,


VARNUM LLP
*Attorneys for Plaintiff/Counter-Defendant*

Dated:  December 27, 2024          By:  ___*/s/ Brion B. Doyle*___
                                   Ronald G. DeWaard (P44117)
                                   Brion B. Doyle (P67870)
                                   Bridgewater Place, P.O. Box 352
                                   Grand Rapids, MI 49501-0352
                                   (616) 336-6000
                                   rgdewaard@varnumlaw.com
                                   bbdoyle@varnumlaw.com